## Patrick Doyle v. Benjamin T. Longstreth, landlord, Appellant, and James McKniff.

*Landlord and tenant—Apportionment of rent of land diminished by sale.*

Where by the terms of a lease the landlord reserved the privilege of selling off portions of the land, the rent to be apportioned accordingly, in the absence of an agreement between the parties as to the precise amount of the reduction to be made after each sale, the tenants remain liable for the payment of such proportion of the whole rent as the rental value of the parts unsold bear to the whole.

*Partnership—Partner's authority to bind his copartner—Estoppel.*

A property which had been leased to copartners was reduced in extent by sales, by the landlord under agreement with the tenants, of portions of the demised farm. One of the cotenants and partners settled and paid the rent for several years upon the basis of an annual reduction of $50.00 on account of land sold. The copartnership was dissolved, the other partner continuing as tenant. *Held,* in an action of replevin by the tenant that the former partner in making the settlement or apportionment of rent acted within the apparent scope of his authority and, in the absence of fraud or collusion, the plaintiff could not be permitted to allege, as against the landlord, that the abatement claimed and allowed was too small, and therefore, that over payments were made which should be applied upon the rent for the years of his sole tenancy.

Argued Nov. 17, 1897. Appeal, No. 69, Oct. T., 1897, by defendant, from judgment of C. P. Delaware Co., June T., 1895, No. 120, on verdict for plaintiff. Before RICE, P. J., WICKHAM, BEAVER, ORLADY, SMITH and PORTER, JJ. Reversed.

Replevin for goods distrained. Before CLAYTON, P. J.

The defendant, Benjamin T. Longstreth, distrained for four years' rent on certain premises amounting to $1,000, after allowing for certain credits which reduced the amount of the distress-warrant to $517.48. The plaintiff, Patrick Doyle, tenant in possession, replevied. The defendant avowed and made cognizance, and the case was tried on the issue of no rent in arrear.

Other facts sufficiently appear in the opinion of the court.

Verdict and judgment for plaintiff. Defendant appealed.

*Errors assigned* among others were (1) in saying to the jury that under the terms of the lease there should be a reduction of

$7.50 per acre for each acre of land sold, this being the construction by the court of the term "a corresponding reduction being made in the rent," for land sold, contained in the following clause in the lease: "The said William M. Longstreth and Patrick Doyle, also covenant and agree to and with the said Benjamin T. Longstreth that on the sale of any of the above property by the said Benjamin T. Longstreth that they, the said William M. Longstreth and Patrick Doyle will release the property so sold from the terms and operations of this lease, on a corresponding reduction being made in the rent, and on payment to them of the value of whatever crop may be in the ground so sold." (2) In charging the jury as follows : "As I have said, you will just consider these two questions and you can take out this lease with you, which I have already construed.   You will clearly see that this is a lease for farming purposes and not for anything else; as I tell you the acreage rule is the rule for the proportionate deduction to be made, and after you have arrived at your verdict there is no objection to the prothonotary taking it, but you must see that it is properly done.   There are two cases before you."   (4) The rent having been voluntarily paid in full to March 1, 1891, by William M. Longstreth, one of the tenants, and the distress warrant being only for rent falling due since, the learned court erred in saying to the jury, that if they found the other tenant did not agree to this payment, he was entitled in this action to be credited at the rate of $7.50 per acre for all land sold since the beginning of the lease.

*V. Gilpin Robinson*, for appellant.—The acts and declarations of the parties may be fairly regarded as throwing light upon what they meant by their written agreement: Colder v. Weaver, 7 Watts, 466 ; Gass's Appeal, 73 Pa. 39.

In the construction of a contract where the language used by the parties is indefinite or ambiguous and of doubtful construction, the practical interpretation by the parties themselves is entitled to great if not controlling influence: Topliff v. Topliff, 122 U. S. 121.

A voluntary payment of money under a claim of right cannot in general be recovered back.

A voluntary overpayment upon a previous quarter cannot be recovered of the landlord: Warner v. Caulk, 3 Whart. 193.

Each member of a partnership is in contemplation of law the general agent of the firm, and has 'power to bind his copart ners by acts done within the scope of the business of the partnership: Savings Fund Society v. Savings Bank, 36 Pa. 498; Edwards v. Tracy, 62 Pa. 374.

The court in instructing the jury that the landlord should be called upon to account for the payments made by Doyle's cotenant, even if Doyle did not understand that his cotenant was only getting a reduction of $50.00 a year, overlooked the fact that the issue on trial was between Doyle and his landlord and not between Doyle and his partner, and further gave no weight to the legal principle that Doyle was bound by the acts of his partner: Tyson v. Pollock, 1 P. & W. 375; Saving Fund Society v. Bank, 36 Pa. 498; Edwards v. Tracy, 62 Pa. 374, and that if his partner had misbehaved, the remedy was against him for such misbehavior. The remedy was not against the landlord to compel him to refund.

*W. Roger Fronefield*, for appellee.

OPINION BY RICE, P. J., February 19, 1898:

Benjamin T. Longstreth, the principal defendant, leased a tract of land to Patrick Doyle, the plaintiff, and William M. Longstreth for the term of one year from March 1, 1882, at an annual rental of $300.

At the end of the first year they remained in joint possession as tenants from year to year until March 1, 1891, after which time Doyle remained in sole possession.

In April, 1895, the landlord issued a distress warrant for the rent which he alleged had accrued between March 1, 1891, and , March 1, 1895, and was unpaid. The goods of Doyle were distrained and he sued out a writ of replevin. The defendants avowed and made cognizance, and upon the trial of the issue upon a plea of no rent in arrear, and a special plea not necessary to be noticed here, it appeared, that the leased premises originally consisted of a tract of land of about forty acres, mostly arable, upon which there were a dwelling house, a spring house . with a tenement overhead, and a barn with stable for six or eight cows or horses. The premises were reduced in extent by sales made by the landlord as follows : in the years beginning,

March 1, 1882, two acres ; March 1, 1886, one acre; March 1, 1887, twelve acres.

Patrick Doyle paid the stipulated rent for the year 1882 ; and for the years 1883, 1884, 1885, 1886, 1887, William Longstreth, his cotenant, paid it. For the subsequent years up to March 1, 1891, when William M. Longstreth went out of possession, the latter paid rent at the rate of $250 a year, under an amicable arrangement, as alleged, between him and the landlord, by which the latter abated $50.00 a year on account of the land sold.

The money with which William M. Longstreth paid the rent for the years mentioned was partly his own and partly Patrick Doyle's.

It is not disputed, that, as between them, the latter was alone liable for the rent for the years 1891—1895 for which the distraint was made.

The principal legal question in the case arises upon the construction of the following clause in the lease : " The said William M. Longstreth and Patrick Doyle also covenant and agree to and with the said Benjamin T. Longstreth that on the sale of any of the above property by the said Benjamin T. Longstreth, that they the said William M. Longstreth and Patrick Doyle will release the property so sold from the terms and operations of this lease, on a corresponding reduction being made in the rent, and on payment to them of the value of whatever crop may be in the ground so sold." Very early in the trial of the case the learned judge construed this to mean, that for every acre sold one fortieth of the rent, or $7.50, was to be abated. The argument in favor of this construction is, that it furnished a convenient rule, whereby the amount of the reduction could be ascertained with certainty and disputes be avoided. The argument is not without force, but it is not convincing. If the parties had intended that reduction should be made according to this inflexible rule it seems reasonable to suppose that they would have so provided in the lease. The land was not rented at so much an acre; the parties had not agreed that the rental value of each acre was $7.50 ; nor was it so in fact, as a reference to the testimony embraced in the third assignment of error will show. It is unreasonable to suppose that if, for example, the landlord had sold the land upon which the house stands,.

which according to the plaintiff's own admission he sublet for $50.00 a year, the parties contemplated no greater reduction of the rent than as if he had sold a piece of swamp land of equal size. It is rather to be presumed that they intended that the rent should be reduced according to the relative rental value of the land sold, rather than its relative quantity, as the law would apportion the rent if the landlord had sold part of the land without the tenant's consent. "The apportionment" (in such a case) " where the parties cannot agree, is to be made by the jury, according to the value, not the quantity of the respective parts:" Reed v. Ward, 22 Pa. 144, citing 1 Thom. Coke, 366, 369; 2 Inst. 503; Cuthbert v. Kuhn, 3 Wh. 357. The general principles upon which the rent is apportioned in such a case were very fully stated in Reed v. Ward, supra, and were thus summarized in Linton v. Hart, 25 Pa. 193: "The law will not apportion rent in favor of a wrongdoer, and therefore if the landlord wrongfully dispossesses his tenant of any portion of the demised premises, the rent is suspended for the whole. But the owner of a reversion has a right to sell the whole or any part of it. The exercise of it is not wrongful, and therefore, in the case of a sale of a part of the reversion, the law will apportion the rent; and the right of apportionment attaches the moment the sale is made." So it has been held that an eviction of a tenant, under a title paramount to that of his landlord, from a portion of the demised premises when the tenant continues in possession of the remaining part, using and enjoying it, does not work a suspension of all subsequent rent. "He remains liable to the payment of such proportion of the rent as the value of the part retained bears to the whole:" Seabrook v. Meyer, 88 Pa. 417. See also Van Rensselaer v. Gallup, 5 Den. 454; Van Rensselaer v. Bradley, 3 Den. 135. The general principle upon which rent is apportioned according to the relative value of the part sold has been applied in many analogous cases, notably in our own case of Martin's Appeal, 2 Pa. Superior Ct. 67, and in Lee v. Dean, 3 Wh. 316; Beaupland v. McKeen, 28 Pa. 124; Carpenter v. Koons, 20 Pa. 222, cited in the opinion of our Brother SMITH. There is nothing in the agreement or in the acts of the parties to indicate that they intended that the acreage rule should be applied. Therefore, the jury should have been instructed, that, in the absence of an agreement between

the parties as to the precise amount of the reduction to be made after each sale, the tenants would remain liable to the payment of such proportion of the whole rent as the rental value of the parts unsold bore to the whole.

This being the rule applicable under a proper construction of the lease, the amount of the reductions to be made as sales were made from time to time was a matter peculiarly subject to the agreement of the parties. The evidence is, that William M. Longstreth, the plaintiff's cotenant and partner, settled and paid the rent for the years 1888, 1889 and 1890 upon the basis of an annual reduction of $50.00 on account of land sold. In so doing he acted within the apparent scope of his authority, and in the absence of proof of fraud or collusion the plaintiff should not be permitted to allege, as against the landlord, that the abatement claimed and allowed was too small, and therefore, that overpayments were made which should be applied upon the rent for the years of his sole tenancy. This is upon the assumption that the payments made by William M. Longstreth out of their joint funds were not made on account of rent generally but in extinguishment of the rent for particular years, pursuant to an agreement between him, acting for himself and his partner and cotenant and their landlord, as to the amount to be abated for those years on account of land sold.

Upon a still narrower view of the authority of William M. Longstreth to settle and adjust the amount of the rent for the years covered by his payments the plaintiff was concluded. William M. Longstreth testified that the plaintiff knew of the abatement and of the amount he was paying, and expressed no dissatisfaction. We have carefully examined the plaintiff's testimony to ascertain whether he denied this statement, and cannot find that he did. It was error, therefore, to submit the question of his knowledge and assent to the jury. It was not a disputed fact. Whether or not, under any circumstances not amounting to fraud, he could go behind a settlement and adjustment, made by his cotenant and partner, of the rent for the years of their cotenancy, it is very plain that he could not do so when the amount was adjusted and paid with his knowledge and implied assent. Under the facts, as the evidence presents them, that was an end of the matter, as far as the rent accruing prior to March 1, 1891, was concerned, and neither landlord nor tenant

could reopen it upon the ground that the abatement allowed was too large or too small. See Jones's Est., 169 Pa. 392; Heffner v. Sharp, 3 Pa. Superior Ct. 249. But as to the rent for which the plaintiff's goods were distrained (March 1, 1891, to March 1, 1895,) we find nothing in the evidence to prevent him from demanding an abatement of the stipulated rent to be estimated in accordance with the rule above stated. If there was an adjustment of the rent for the preceding years upon terms which were satisfactory to the parties, it cannot now be claimed that there was an overpayment. The case of Weber v. Rorer, 151 Pa. 487, has no application to such a state of facts.

Enough has been said, without discussing the assignments of error separately, to show that the case was tried upon a wrong theory, both as to the construction of the lease and as to the plaintiff's right to claim that overpayments were made in the years prior to 1891 which he could defalk from the rent accruing subsequently thereto.

The judgment is reversed and a venire facias de novo awarded.