# Chestnut Street Trust & Saving Fund Company *v.* Hart, Appellant.

*Promissory notes—Accommodation notes—Trust company—Defenses—Payments—Appropriation of payments.*

Where the trust officer of a trust company, on a small salary, makes a promissory note for a large amount, payable to the company, as an accommodation for the president of the company, on the assurance by the president that he would never be asked to pay it, such note will be considered as an ordinary accommodation note, and the maker will be liable on it, unless he shows that the trust company actually agreed that he should not be held upon it. In such a case the discrepancy between the maker's salary and the amount of the note is immaterial; and it is also immaterial that the president continued to acknowledge his liability on the note to the company, and that the company continued to look to him for payment.

In such a case, where the president, after the insolvency of the trust company brought about by his own appropriation of its funds, assigns to the assignees of the company a fund without directing any appropriation to any particular item or items of his indebtedness, the assignees have a right to apply the fund to any claims against the president, and the fact that the assignees applied the fund to the payment of debts other than the note in question, cannot be set up as a defense by the accommodation maker of the note.

Where a debtor makes no appropriation of a payment, the creditor upon receiving payment, may apply it to that item of debt which to him seems the least secure.

Argued Jan. 25, 1907. Appeal, No. 205, Jan. T., 1905, by defendant, from order of C. P. No. 2, Phila. Co., March T., 1903, No. 4,381, dismissing exceptions to report of referee in case of The Chestnut Street Trust & Saving Fund Company to use of George H. Earle, Jr., and Richard Y. Cook, Assignees for benefit of creditors, v. Henry G. Hart. Before MITCHELL, C. J., FELL, BROWN, MESTREZAT, POTTER and STEWART, JJ. Affirmed.

Exceptions to report of James W. Laws, Esq., referee.
The opinion of the Supreme Court states the case.

*Error assigned* was in dismissing exceptions to report of referee.

*J. H. Gendell,* for appellant.—Hart incured no personal liability on the note. Where an agent contracts for a known principal, by any form of contract, except by deed when he must act in the name of his principal, the principal only is liable, and the agent is not: Wanner v. Emanuel's Church, 174 Pa. 466 ; Roberts v. Austin, 5 Whart. 313 ; Sharp v. Emmet, 5 Whart. 288.

The debt represented by this note has been paid in full: Berghaus v. Alter, 9 Watts, 386 ; Harker v. Conrad, 12 S. & R. 301 ; Crawford v. Bent, 21 W. N. C. 185 ; Black v. Robinson, 13 W. N. C. 172 ; Cowperthwaite v. Sheffield, 3 N. Y. Superior Ct. 416; Thompson v. Hudson, L. R., 6 Ch. App. Cases, 320 ; Blackstone Bank v. Hill, 27 Mass. 129 ; Bodenham v. Purchas, 2 B. & Ald. 39 ; Perris v. Roberts, 1 Bern. 34.

*P. F. Rothermel,* with him *John G. Johnson,* for appellee.— The claim that the defendant is not liable upon the note is without merit : Gunster v. Scranton Illuminating Heat, etc., Co., 181 Pa. 327 ; United Security Life Ins., etc., Co. v. Central Nat. Bank, 185 Pa. 586.

The payment was properly applied to the debt which was least secure : Richard's Est., 185 Pa. 155 ; Johnson's App., 37 Pa. 268 ; Smith v. Brooke, 49 Pa. 147 ; Foster v. McGraw, 64 Pa. 464 ; Creasy v. Emanuel Ref. Church, 1 Pa. Superior Ct. 372 ; Pierce v. Sweet, 33 Pa. 151.

OPINION BY MR. JUSTICE BROWN, April 15, 1907 :

On March 22, 1892, The Chestnut Street Trust and Saving Fund Company, of which William M. Singerley was president, lent him $50,000 on his promissory note, taking as collateral security for its payment an assignment of a bond and mortgage for $100,000, given by him to H. G. Hart. They were executed to secure the payment of this note, but, instead of being given directly to the trust company, were given to Hart, its title officer. This was evidently a device of Singerley's to avoid the record evidence of his indebtedness to the institution of which he was president. On the maturity of the note, March 22, 1893, it was renewed by Singerley for another year. On March 22, 1894, when the renewal matured, he continued the loan by substituting for his own note that

of H. G. Hart, the appellant. From that time the loan was carried on the books of the company against Hart, although the entries show it was the same one that had been made to Singerley. Hart's note was renewed in March, 1895, for a year, and, when it matured, he renewed it for six months. Thereafter he renewed it every six months, the last renewal coming due March 23, 1898, and it is the note now in suit. The interest upon Hart's original note and all of the renewals, except the one in suit, was paid by Singerley. The change in the name of the maker of the note from Singerley to Hart was made at the instance of Singerley, that his name might not appear as being too large a borrower on the books of the company. This fact was known to its secretary and treasurer from the time the note was given until it executed to the appellees a deed of assignment for the benefit of creditors. Payments have been received on account of the principal of Hart's note from the sale of the real estate on which the mortgage was given to him, reducing the amount to $34,450.37, with interest from October 4, 1901. Suit having been brought for this balance, the case was referred, under the Act of May 14, 1874, P. L. 166, and upon the report of the referee, judgment was entered for the amount claimed by the appellees.

Four defenses were set up in the court below : (1) The defendant acted as the agent of William M. Singerley, and the plaintiffs, having pursued him for the payment of the debt, have acknowledged the agency and are restricted to the principal for payment ; (2) there was an understanding between the trust company and the defendant that either he was not to be held liable in any event upon the note, or that his liability was to be restricted to the collateral pledged ; (3) the defendant received no consideration for the note; and (4) the note has been paid in the eye of the law, although not actually paid, on account of an erroneous application by the appellees of assets of William M. Singerley to the payment of other debts instead of to the one in suit.

As to the first defense it is sufficient to say that the finding of the referee is that Hart was an accommodation maker of the note and did not sign it as agent or surety for Singerley. The only witness as to the circumstances attending the making of the note was Hart himself, and there is nothing in his testi-

mony to show that he signed it as agent, but, on the contrary
no other interpretation can be put upon what he says than
that he signed it as an accommodation maker for Singerley.
His own words are : " Mr. Singerley, for his own purposes,
asked me to make the note." As to the second defense there
is no evidence of any understanding or agreement between the
trust company and the appellant that he was not to be held
liable upon the note, or that his liability was restricted to the
collateral pledged. He does testify that Singerley stated to
him at the time he asked him to sign the note, " Of course,
Hart, you understand this is my debt. You will never be
asked to pay it;" but he does not testify that the trust com-
pany ever agreed he should not be held upon it. He relied
upon Singerley to relieve him from liability, for he says,
" Knowing Mr. Singerley as a wealthy man, such a thing as
my ever having to pay the note, or ever being asked to pay
it, never occurred to me." He further said that he acted upon
the faith of Singerley's statement that he would never be
asked to pay the note. His confidence, unfortunately for him,
was misplaced, as it often is by an accommodation maker of
a note ; but the holder takes it on the promise of the maker
to pay it, and it is no defense against the holder that he for
whose accommodation it was made will not or cannot pay it.
It was, as the appellant says, Singerley's debt, and was so
viewed by the trust company, but there is nothing in his tes-
timony to show that the company, or anyone authorized to
speak for it, ever said to him that his liability would in any
manner be different from that of the ordinary accommodation
maker. He testified that at the time he gave the note he was
an employee of the institution, receiving a salary of but $1,300
a year, and was worth but about $2,000, and from this his
counsel argue for him that it is not conceivable that the com-
pany accepted his obligation for $50,000 with any intention
or expectation of holding him on it. In the absence of any
valid agreement that he was not to be held, or of legal rea-
sons why his liability did not attach when he gave it, the law
cannot countenance as a defense the theory of the improbab-
ility of the trust company's acceptance of the note as a valid
and enforcible obligation.

He did not become accommodation maker at the instance of

the trust company. and for its own purposes. If he had, he could now successfully defend : Tasker's Estate, 182 Pa. 122. He gave the note for the accommodation of one of its customers, to whom it surrendered his note when it received appellant's in its place, which was an absolute promise in writing that he would pay the indebtedness of his friend. That Singerley continued to acknowledge his liability to the institution, and that it continued to look to him for payment was only in probable relief of the appellant, and not in discharge of his absolute liability, voluntarily assumed. He lent his credit to his friend, and his friend's creditor accepted it. This is the whole case boiled down. It is a hard one, as all such cases are, but we can find nothing in it to relieve the appellant from the rule of the law that, " he who chooses to put himself in the front of a negotiable instrument for the benefit of his friend, must abide the consequences : " Lord v. Ocean Bank, 20 Pa. 384. Under the circumstances his defense of no consideration cannot avail him.

On February 10, 1898, Singerley being deeply involved financially, executed to George H. Earle, Jr., receiver of The Chestnut Street National Bank, as collateral security for his indebtedness to it, an assignment, subject to prior assignments, of all his interest in the stock and bonds of the Record Publishing Company. On the same day, subject to the assignment made to the receiver, he assigned to the appellees the balance of his interest in these Record securities, to secure his indebtedness to the trust company. He died February 27, 1898, hopelessly insolvent. In a proceeding in the circuit court of the United States for the eastern district of Pennsylvania, instituted for the purpose of having the pledged securities sold, the amount due to the appellees was fixed in the decree ordering their sale. The indebtedness included the balance due upon this note, and it was decreed that the payment of Singerley's debts, including this one, but not specially mentioning it, should be paid out of the proceeds of the sale of the securities. They were sold, and after paying to the holders of the prior assignments the indebtedness due to them, the sum of $552,505.95 was paid to the appellees, the assignees of the trust company. When Singerley assigned to them the balance of his interest in the securities, he gave no direction as to the appropriation of their

proceeds. He might have done so, and his direction that they should be appropriated to any particular indebtedness could not have been disregarded. When he failed to direct an appropriation to any particular item or items of indebtedness, his creditor, through its assignees, had the right to apply the proceeds to any claim against him, and upon their failure to do so, the law would make the application in their interest. The payment to them of the balance of the proceeds of the sale of the stock and bonds must be regarded as having been made by Singerley himself, for the proceeding in the circuit court of the United States was not to compel him to pay his debts, nor to distribute the proceeds of the sale of the stock to any particular items of indebtedness. It was to ascertain the amounts of the three respective interests in them : (1) those who had special pledges of them ; (2) the receiver of The Chestnut Street National Bank, as trustee for the creditors of the bank ; and (3) the appellees, trustees for the creditors of the trust company. In the decree ordering the sale of the securities, the amount due to each of these three interests was fixed. The creditors of the first class were paid in full, the receiver of the bank was paid in full, and the balance that remained was paid to the appellees, just as if Singerley had paid it himself. By the decree of the circuit court there was no distribution to any particular items of indebtedness due by Singerley to the appellees, but it was simply determined that they should get the balance remaining after the sums found due to the holders of the prior assignments had been paid, and the sum awarded to the appellees was received by them, just as if they had received it directly from Singerley. They were, therefore, at liberty to distribute it as if themselves had sold the stock and there had been no intervention of the court. This being the case, Hart can make no objection to any appropriation of the proceeds made by the appellees, so long as they were appropriated to Singerley's indebtedness to the trust company, for Singerley himself could make no objection if he were living. When he assigned the collateral, without specifying what appropriation should be made of the proceeds of it, the appropriation made by the creditor could not be questioned by him : Logan v. Mason, 6 W. & S. 9. In the comparatively recent case of Risher v. Risher, 194 Pa. 164, a debtor assigned

to creditors his interest in a mortgage, the preamble reciting that he was indebted to them in a sum of money exceeding his interest in the mortgage. The express purpose of the assignment was to secure to the assignees payment of his indebtedness to them, but he indicated in his assignment no purpose to appropriate the amount assigned by him to any particular item or items of his indebtedness. The creditors appropriated it to certain items of his indebtedness, and subsequently he objected to the appropriation as made by them, and we said, in sustaining the court below in its ruling that the appropriation made by the creditors could not be questioned by the debtor: "The rule in this state, as held by the referee and court below, is, that a debtor may appropriate his payments as he sees fit at the time he makes them; if he makes none, the creditor can make such appropriation on one or more of several obligations; if neither, at the time of payment, make such appropriation, then the law will make one to the debts oldest in point of time: Souder v. Schechterly, 91 Pa. 83; Pardee v. Markle, 111 Pa. 548, and many other cases. Where the debtor makes no appropriation, and the creditor does so, the latter may apply it to that item of debt which to him seems least secure: Reed v. Ward, 22 Pa. 144; Hollister v. Davis, 54 Pa. 508." This is just the situation here, and it does not lie in the mouth of the appellant to question the appropriation made by the appellees.

The assignments of error are all overruled and the judgment is affirmed.