Page, Appellant, *v.* Wilson.

428

Argued October 1, 1942.

Before KELLER, P. J., CUNNINGHAM, BALD-
RIGE, RHODES, HIRT and KENWORTHEY, JJ.

*John P. Vallilee,* for appellant.

*J. Roy Lilley,* for appellee.

OPINION BY KELLER, P. J., November 11, 1942:

This appeal is concerned solely with the application of payments for rent of real estate made by the lessee.

On May 17, 1924 Maney & Page entered into a written lease with William P. Wilson, under which they leased to him a suite of offices on the second floor of the Maney & Page building in Sayre, Pennsylvania, to be used as a law office, for the term of five years from June 1, 1924 to May 31, 1929, inclusive, for which the lessee agreed to pay as rent the sum of $360 annually, payable $30 each and every month in advance. The lease authorized the Prothonotary or any attorney of any court of record in Pennsylvania "to appear for and to confess a judgment against the said party of the second part [lessee] and in favor of the said party of the first part [lessors] for the whole amount of said rent as hereinbefore set forth". A later clause in the lease provided: "It is further agreed that the terms and conditions of this agreement and lease shall in no way be changed or altered except by a writing signed by all of the parties hereto; and if the said party of the second part shall continue in possession of the said premises after the expiration of said term [of five years], at the option of the said party of the first part such holding over may be held and deemed a renewal of this agreement for another like term, the same as though a new agreement of leasing, identical with this, had been executed and delivered by the said parties hereto for a succeeding term".

William P. Wilson, the lessee, did not himself occupy the leased premises, but permitted his nephew, Howard F. Wilson, to occupy them, and the latter conducted his law practice there. He continued in possession of the offices after May 31, 1929, and the lessors exercised their option of holding such continuance of possession to be a renewal of the lease for another term of five years (ending May 31, 1934), as provided in the lease.

Howard F. Wilson paid the lessors whatever payments of rent were made up until January 16, 1932. He did not comply strictly with the terms of the lease as respects the payments being made monthly in advance; but until 1932 they were made reasonably regularly. His payment of $180 on January 16, 1932 paid the rent up to and including August 31, 1931 and $20 on account of September, 1931. On September 13, 1933, Walter T. Page, acting partner of Maney & Page, wrote William P. Wilson informing him that no rent had been paid since January 16, 1932 and that the rent due to September 1, 1933 amounted to $700.

On September 22, 1933 William P. Wilson sent Page his check for $100, which the latter credited on September 25, 1933, and later notified Wilson that said payment covered the *rent due to December 31, 1931.*

It will be noted that the five year renewal term expired on May 31, 1934. At that time there was due on said lease the sum of eight hundred and forty dollars.[1]

No new lease was executed, but Howard F. Wilson occupied the leased premises up to and including December 31, 1935, when he surrendered possession.

On September 13, 1934 Page, in response to a request of William P. Wilson for a statement of the "Howard F. Wilson office rent account," furnished him a statement, showing the amount due to September 1, 1934 to be $960. That letter, as well as his prior letter of

---

[1] $870, less an admitted error of $30.

September 13, 1933 showed that the lessors, as they received payments of rent applied them to the oldest rentals due and unpaid.

Following this letter, payments were made by William P. Wilson to Page by check, as follows:

| | |
|---|---|
| September 14, 1934 | $100 |
| June 18, 1935 | 70 |
| August 31, 1935 | 90 |
| January 20, 1936 | 100 |
| September 14, 1936 | 100 |
| September 6, 1937 | 100    $560 |

Walter T. Page, who outlived James B. Maney, died on January 1, 1939. His daughter, Jeannette Palen Page, was granted letters testamentary as executrix of his will, and by virtue thereof became liquidator of the partnership of Maney & Page.

On February 2, 1940 as liquidator she filed the abovementioned lease in the Prothonotary's office and by virtue of a confession therein contained, affidavit of default, and leave of court to enter judgment on an instrument over ten years old, she caused judgment to be entered on said lease against William P. Wilson for $1800 and costs, "Execution thereon to be limited to $870, with interest from June 1, 1934 and costs."

Thereupon on petition of William P. Wilson setting forth that he had paid all of the rent due under said lease, except $280, the court granted a rule to show cause why the judgment should not be opened and defendant let into a defense; which the court on September 11, 1941 made absolute as to any amount claimed in excess of $280.

Two days later this order was revoked, in order to permit a fuller consideration of the subject, but on November 3, 1941 after due and careful consideration, the court reinstated its order of September 11, 1941. Plaintiff appealed.

The court below relied largely on the principles re-

lating to appropriation of payments enunciated by Chief Justice GIBSON in *Harker v. Conrad,* 12 S. & R. 301, which the plaintiff contended had been overruled or departed from in later decisions of the Supreme Court.

While we have found no decision expressly overruling *Harker v. Conrad,* supra, the trend of later decisions in this Commonwealth has departed in some particulars from the rules announced by Chief Justice GIBSON in that case. He said: "Although as between the immediate parties, the creditor has a right to appropriate, where the debtor has failed to do so, yet this right must be exercised within, at the furthest, a reasonable time after the payment, and by the performance of some act which indicates an intention to appropriate. It is too late to attempt it at the trial; and were it otherwise, there would, in the absence of an actual appropriation by the debtor, be no rule on the subject but the will of the creditor, which would in all cases be decisive; but such is not the fact. In default of actual appropriation, the matter is to be determined by rules and circumstances of equity. The debtor has a right to make the application, in the first instance, and failing to exercise it, the same right devolves on the creditor; but where neither has exercised it, the law nevertheless presumes, in ordinary cases, that the debtor *intended* to pay in the way which, at the time, was most to his advantage. Thus, if it were peculiarly the interest of the party to have the money received in extinguishment of a particular demand, the law intends that he paid it in extinguishment of such demand, and that the omission to declare his intention was accidental. Such intendment is reasonable and natural, and one which will, in most cases, accord with what was actually the fact; it is, therefore, equivalent to an exercise of the party's right by acts, or an express declaration of intention. Where, however, the interest of the debtor could not be promoted by any particular

appropriation, there is no ground for a presumption of any intention on his part, and the law then raises a presumption for the same reason, that the payment was actually *received,* in the way that was most to the advantage of the creditor. I think these principles, as furnishing general rules, may fairly be extracted from the cases."

The principles announced in the later decisions are: The debtor has a right to make the application, in the first instance, and failing to exercise it, the same right devolves on the creditor. When no application is made by either party, the law determines how the payments are to be applied in accordance with equitable rules and principles, and primarily, it deems the payments to have been made in discharge of the earliest liabilities of a running account—each item of credit is applied in extinguishment of the earliest debit items in the account; in other cases, it will apply the payment, when not appropriated by either party, in the way most beneficial to the creditor, that is, to the *debt least secured,* unless to the prejudice of a surety. See *Risher v. Risher,* 194 Pa. 164, 170, 45 A. 71 (DEAN, J.) ; *Chestnut St. T. & S. F. Co. v. Hart,* 217 Pa. 506, 512, 66 A. 870; *Pierce v. Sweet,* 33 Pa. 151, 157; *Souder v. Schechterly,* 91 Pa. 83, 86, 87; *Pardee v. Markle,* 111 Pa. 548, 555, 5 A. 36; *Louisville Cotton Mills Co. v. Fritz,* 155 Pa. 144, 148, 25 A. 1046; *Hoover v. Summerville,* 67 Pa. Superior Ct. 544, 547, 550; *Fischbach & Moore, Inc. v. Natl. Bank,* 134 Pa. Superior Ct. 84, 92, 3 A. 2d 1011. See 97 A. L. R. 349, note.

But this latter rule, though it modifies the rule as declared by Chief Justice GIBSON, does not in the circumstances of this case, require us to hold the court below guilty of an abuse of discretion. An application to open a judgment is an equitable proceeding, governed by equitable principles addressed to the sound discretion of the court: *Mutual B. & L. Assn. v. Walukie-*

*wicz,* 322 Pa. 240, 185 A. 648. In the present case, the equities are not such as to require us to reverse the court's order.

(1) The testimony shows that it was the landlord's practice to credit the payments made by William P. Wilson to the oldest instalment of rental due and unpaid; and that Wilson had knowledge of such appropriation. And this was in accordance with the rule laid down by the Supreme Court with respect to the *application of payments of rent on a lease of real estate,* where no special appropriation had been made by either party, in *Reed v. Ward,* 22 Pa. 144, 151,[2] and followed in *Hollister v. Davis,* 54 Pa. 508.

(2) The appropriation of William P. Wilson's payments of $560, made between September 14, 1934 and September 6, 1937 to the rent accruing after the date of expiration of the renewal term of the lease was not made by W. T. Page or Maney & Page, but by the liquidator of Maney & Page, after the death of the partners of the firm and over five years and four months after the payment of September 14, 1934 and nearly two years and five months after the last payment of September 6, 1937, and was contrary to the practice of the firm.

(3) All the payments—however applied—were unquestionably payments of rent, and related to the lease of May 17, 1924. The case is not similar to, nor governed by, *Garrett's Appeal,* 100 Pa. 597, relied on by appellant. There the debtor admittedly owed money to his creditor, (1) for rent and (2) for advances of money. The creditor opened a ledger account in which he entered on the debit side the advances of money and the monthly charges for rent, and on the credit side the sums received from his debtor. Nothing appeared in

---

[2] Payments of rent made on a *lease of real estate* without any special appropriation will be "applied to the extinguishment of the rents which first accrued." *Reed v. Ward,* supra, p. 151.

the ledger to indicate any appropriation of the payments credited to the debtor. The creditor distrained upon the goods on the premises for the rent in arrear from the beginning of the lease. Before the sale on the distress, the debtor confessed a judgment with intent to defraud, hinder and delay his landlord creditor, and a fi. fa. was issued on the judgment under which a levy was made on the goods. The goods were sold under both the distress and the fi. fa. On distribution of the fund, it was held that the creditor's action in distraining for all the rent constituted an election on his part not to apply any of the credits to the rent; that he had a right to do so, because the indebtedness outside the lease was the least secured, since it could not be distrained for. It would be applicable here, if William P. Wilson owed money to Maney & Page apart from the lease, and he had made payments not appropriated to either account, and they had manifested an intention to appropriate his payments to the other account by issuing a distress for rent for an amount which did not credit any of his payments as rent. The payments of September 14, 1934, $100, June 18, 1935, $70, and August 31, 1935, $90, were all made before January 1, 1936 when possession was surrendered by Howard F. Wilson, and distress for the rent in arrears could have been made by Maney & Page at any time before that date.

(4) The rule applies to the 'least secured *debt.*' That means an admitted or recognized indebtedness, or, at least, one whose validity is not contested. It does not contemplate an appropriation by a creditor of money paid by his debtor to a disputed or contested claim, so as to bar the latter of his right to litigate his liability. There would be no equity in that. Such an intention could never have been contemplated when the payment was made.

The defendant denies any liability for the rent or occupation of the premises after the ten years stipulated

in the lease by way of the original and renewal terms. He admits his liability for all the unpaid rent accrued during those terms, after crediting the payments on account of it made by Howard F. Wilson and himself. But he contends that by its express provisions the lease definitely was ended when the ten years had expired; that if Maney & Page permitted the occupant to remain in possession after the expiration of the renewal term, the latter, and not the former lessee, was their tenant.

In order to hold William P. Wilson liable for the rent accruing from and after June 1, 1934, the plaintiff must establish that, by the *occupant* holding over, the written lease was renewed for another year and remained in force until the premises were surrendered by the lessee and accepted by the lessor. So her claim against William P. Wilson must rest on the continuance of the *lease* as against him.

To permit the liquidator to apply the payments made by William P. Wilson to Page to the rent due for the occupancy of the premises after the term of the lease and the renewal term had expired, contrary to William P. Wilson's contention, would deprive him of his right to have that question litigated and legally decided. The fact that the clause in the lease authorizing the confession of judgment expired with the expiration of the renewal term *(Smith v. Pringle,* 100 Pa. 275; *Gold v. Fox Film Corp.,* 289 Pa. 429, 432, 137 A. 605; *Thompson v. Carns,* 93 Pa. Superior Ct. 575, 578. See also *Swigert v. Hartzell,* 20 Pa. Superior Ct. 56, 61), did not justify an appropriation contrary to the practice of the parties and so far from any possible intention of the lessee.

If the plaintiff has a just claim against the defendant on account of the occupancy of the premises by Howard F. Wilson from June 1, 1934 to January 1, 1936, it can be decided by an action of assumpsit, even though not determinable on the rule to open the judgment.

Order affirmed.