In re James E. COMER and Martha E. Comer, his wife, Debtors.

Lefferage B. MOXLEY a/k/a Pete Moxley and Anna Pauline Moxley, Plaintiffs,

v.

James E. COMER and Martha E. Comer, Defendants.

Bankruptcy No. 1–81–00135.
Adv. No. 1–81–0093.

United States Bankruptcy Court, M. D. Pennsylvania.

March 30, 1982.

Gilbert G. Malone, York, Pa., for plaintiffs.

S. Woodrow Sponaugle, Lancaster, Pa., for defendants.

## MEMORANDUM AND ORDER

THOMAS WOOD, Bankruptcy Judge.

### APPLICATION TO LIFT THE AUTOMATIC STAY

James and Martha Comer have filed for relief under Chapter 11 of the Bankruptcy Code. Lefferage and Anna Moxley, mortgagees of the debtors, have filed for a modification of the stay imposed by § 362 of the Bankruptcy Code so they can foreclose on the debtors' real property. Adjudication requires that we determine whether payments made by the debtors to the Moxleys reduced the debtors' unsecured indebtedness or reduced their secured indebtedness.

## FINDINGS OF FACT

1. The debtors were in the residential home construction business when they filed their Chapter 11 bankruptcy petition on February 13, 1981.

2. The Moxleys had provided financing to the Comers for the purchase of three parcels of land prior to the bankruptcy. The three parcels are located in York County, Pennsylvania. Each parcel consists of three lots: the first parcel, lots 27, 28 and 29; the second parcel, lots 30, 31 and 32; and the third parcel, lots 33, 34 and 35.

3. The debtors granted the Moxleys a $26,300 mortgage on the first parcel, a $90,000 mortgage on the second parcel and a $70,000 mortgage on the third parcel.

4. The Moxleys also advanced unsecured funds to the debtors for general working capital. These advances were covered by promissory notes. The sum of $48,000 was advanced for the second parcel and $59,500 was advanced for the third parcel.

5. As each lot was sold by the debtors, a substantial portion of the sale proceeds was paid to the Moxleys in exchange for a release from the mortgage on that lot.

6. When the Moxleys received proceeds from the sale of a lot, they knew the funds were derived from such a sale.

7. On October 12, 1977, lot 35 was sold. From this sale $50,000 was paid to the Moxleys.

8. On July 28, 1978, lot 33 was sold. From this sale $35,000 was paid to the Moxleys.

9. On September 17, 1978, lot 31 was sold. From this sale $40,000 was paid to the Moxleys.

10. On November 2, 1979, lot 30 was sold. From this sale $54,223.20 was paid to the Moxleys.

11. The debtors and the Moxleys had no express written agreement concerning the application of the sale proceeds.

12. The Moxleys did not apply the proceeds of the sale of the lots to the unsecured debts rather than the secured debts at any time prior to the commencement of bankruptcy.

13. No cash payments have been made in satisfaction of the outstanding interest on any of the mortgages since October 31, 1979.

14. On November 2, 1979, the debtors gave the Moxleys a promissory note in the amount of $21,789 as payment for accrued interest under the three mortgages. This brought the interest current to that date. On November 13, 1979, judgment was entered on this note. On March 31, 1980, lot 28 was sold. From the proceeds of this sale the debtors paid the Moxleys $22,000, which the Moxleys applied in partial satisfaction of the mortgage on the first parcel.

15. Of the nine original lots, four are currently unsold, lots 27, 29, 32 and 34.

16. The fair market values of the remaining lots are as follows: lot 27, $15,000; lot 29, $45,000; lot 32, $59,000; and lot 34, $65,000.

17. The four unsold lots are subject to several other liens: a judgment lien in favor of State Line Lumber and Supply Company, in the amount of $42,481.46; a judgment lien in favor of Grimmel Brothers in the amount of $65,500.93; two tax liens held by Red Lion Area School District aggregating $1,977.56; and a judgment lien held by the Moxleys in the amount of $1,268.54. These liens total $109,959.95.

18. The Moxleys' $1,268.54 lien is subordinate to the other three liens.

## DISCUSSION

■ Over the course of their relationship, the debtors made four payments to the Moxleys aggregating $179,223.20. This sum was derived from the sale of lots 30, 31, 33 and 35. At the time these payments were made the parties had no express written agreement controlling whether the payments would be applied to the debtors secured indebtedness or to their unsecured indebtedness. The debtors did not direct the Moxleys to apply the payments to one indebtedness rather than another, nor did the Moxleys apply the payments to any specific debts and so advise the debtors. The Moxleys contend that the law of Penn-

sylvania provides for the application of the payments to the unsecured indebtedness, thus reducing the least secured debts first. The Moxleys cite the case of *Page v. Wilson*, 150 Pa.Super. 427, 433, 28 A.2d 706 (1942), which states that:

> The debtor has a right to make the application, in the first instance, and failing to exercise it, the same right devolves on the creditor. When no application is made by either party, the law determines how the payments are to be applied in accordance with equitable rules and principles, and primarily, it deems the payments to have been made in discharge of the earliest liabilities of a running account—each item of credit is applied in extinguishment of the earliest debit items in the account; in other cases, it will apply the payment, when not appropriated by either party, in the way most beneficial to the creditor, that is, to the debt least secured, unless to the prejudice of a surety.

*Page*, supra, is inapplicable to the case at bar. There are two independent bases for this conclusion. The first basis is that the rule of *Page*, supra, is inapplicable if the debtor and the creditor have an agreement concerning the application of the payments. *Kann v. Kann*, 259 Pa. 583, 589, 103 A. 369 (1918). Although the debtors and the Moxleys have no express written agreement, an agreement to apply the payments to the secured indebtedness can properly be inferred from the arrangement between the parties. In each sale of land, a release of the Moxleys' mortgage lien was given in exchange for a substantial portion of sale proceeds. The second basis for excepting the circumstances of this case from the effect of the *Page* rule relates to the effect of § 544 of the Bankruptcy Code. Under § 544 the trustee has the status of a creditor who holds a lien and an unsatisfied execution against all the debtor's property. Under Pennsylvania law a creditor who executed against the property of the debtors would be entitled to have the payments between the Moxleys and the debtors applied in the way most beneficial to him to the extent that the payments were not pre-viously applied by either of those parties. *Smith v. Brooke*, 49 Pa. 147, 151 (1865). Section 544 gives the trustee the status of such a hypothetical creditor. Therefore, the court must apply the payments in the way most beneficial to the trustee. The payments will be applied in satisfaction of the debtors' secured indebtedness.

The proceeds from lots 30 and 31, aggregating $94,223.21, are applied against the $90,000 mortgage on parcel two and extinguish that mortgage. The difference of $4,223.21 is applied to reduce the debtors' unsecured indebtedness. The proceeds from lots 33 and 35, aggregating $85,000, are likewise applied against the $70,000 mortgage on parcel three and extinguish that mortgage. The difference of $15,000 is applied in partial satisfaction of the debtors' unsecured indebtedness. The Moxleys application of the $22,000 proceeds from lot 28 against the mortgage on the first parcel, rather than against the judgment note, reduces the mortgage on that parcel from $26,300 to $4,300.

This leaves the Moxleys with a secured claim in this bankruptcy consisting of a $4,300 mortgage debt and judgment liens aggregating $23,268.54. The mortgage encumbers the first parcel of property and the judgment liens encumber all three parcels. Other outstanding encumbrances on these parcels equal $109,959.95. The three parcels are worth $184,900.00.

The automatic stay imposed by the Bankruptcy Code can be modified or terminated:

> (1) for cause, including the lack of adequate protection of an interest in property of such party in interest; or
>
> (2) with respect to a stay of an act against property, if—
>
> (A) the debtor does not have an equity in such property; and
>
> (B) such property is not necessary to an effective reorganization.

11 U.S.C. § 362(d). The Moxleys' application to lift the automatic stay is predicated upon their claim that the payments from the sale proceeds of lots 30, 31, 33 and 35 should be applied against the unsecured in-

debtedness of the debtors. It is our decision that this claim lacks support in law. The Moxleys' secured claim is $27,568.54. One portion of this claim has a priority superior to all other encumbrances while another portion is inferior to all other encumbrances. The outstanding encumbrances of other creditors total $109,959.95, leaving the debtors with an equity cushion of $47,371.51. We find that the Moxleys are adequately protected. We find also that the requirements of section 362(d)(2) have not been met. The primary requirement is a showing that the debtors have no equity in the property. The Moxleys failed to meet that requirement; there is substantial equity. The automatic stay will not be lifted or modified.

### CONCLUSIONS OF LAW

1. The proceeds from lots 30 and 31, aggregating $94,223.21, are to be applied, in part, against the $90,000 mortgage on parcel two and extinguish that mortgage. The difference of $4,223.21 is to be applied to reduce the debtors' unsecured indebtedness.

2. The proceeds from lots 33 and 35, aggregating $85,000, are to be applied, in part, against the $70,000 mortgage on parcel three and extinguish that mortgage. The difference of $15,000 is to be applied to reduce the debtors' unsecured indebtedness.

3. The plaintiffs are not entitled to relief from the automatic stay provided by section 362 of the Bankruptcy Code.

### ORDER

AND NOW, this 30th day of March, 1982, IT IS ORDERED that the request of Lefferage Moxley and Anna Moxley to modify the stay imposed by 11 U.S.C. § 362 is denied.