Fedders Financial Corporation *v.* Chiarelli Bros.,
Inc. (et al., Appellant).

Argued December 7, 1971. Before WRIGHT, P. J., MONTGOMERY, JACOBS, HOFFMAN, SPAULDING, and CERCONE, JJ. (WATKINS, J., absent).

*Henry M. Koch, Jr.*, with him *Henry M. Koch*, and *McGavin, DeSantis & Koch*, for appellant.

*Mark C. McQuillen*, for appellee.

OPINION BY HOFFMAN, J., March 24, 1972:

This is an appeal from the order of the court below denying appellant's petitions to open and strike a default judgment.

On March 17, 1969, appellee Fedders Financial Corporation (Fedders) initiated an action in replevin for twenty-six specific air conditioners by filing a praecipe for a writ of replevin without bond. The air conditioners, formerly a portion of the inventory of Chiarelli Bros., Inc. (Chiarelli), an appliance dealer, were being held by appellant American Bank and Trust Co. of Pa.

(Bank) as mortgagee in possession of the real estate occupied by Chiarelli as tenant.

Fedders filed a complaint in replevin against the Bank on April 15, 1969, endorsed with notice to plead within twenty days from the date of service. The complaint was served upon the Bank's attorney on April 16, 1969. A praecipe to reissue the writ of replevin with bond added was filed by Fedders on April 21, 1969, and the reissued writ was served upon the Bank's attorney on April 22. The Bank filed a counter-bond on April 24, 1969.

On May 8, 1969, twenty-two days after the filing of the complaint and sixteen days after the service of the reissued writ of replevin with bond, Fedders took a judgment for want of an answer. On May 13, 1969, the Bank filed petitions to open and strike off the judgment. Fedders filed a demurrer to both petitions for the reason that they "did not set forth a meritorious defense to Fedders' complaint."

After argument, the Bank was given leave to file an amended petition to open the judgment, the petition to strike having been previously denied. Fedders filed preliminary objections to the Bank's amended petition to open judgment, but these were dismissed and Fedders was given leave to file an answer to the Bank's amended petition.

An answer to the amended petition together with new matter was subsequently filed by Fedders, and the Bank filed an answer to Fedders' new matter. On June 9, 1970, a rule was entered against the Bank to proceed to take depositions or argue the matter. Thereafter, counsel for the parties prepared and submitted to each other a stipulation of facts in lieu of depositions.

The matter was then argued before the court below, which filed an opinion on August 6, 1971, denying the Bank's petitions to strike and open the default judgment taken against it.

We agree with the lower court that the judgment entered against appellant was regular on its face and cannot be stricken.

As to the petition to open judgment, three requirements must be met: (1) the petitioner must have an explanation or excuse for having permitted the default to occur; (2) the petition to open must be filed promptly, and (3) petitioner must show that it has a meritorious defense to the action. *Kramer v. Philadelphia,* 425 Pa. 472, 229 A. 2d 875 (1967).

The lower court found that appellant had met the first two requirements. The only question which merits discussion in this appeal is whether or not appellant has a meritorious defense to the action in replevin.

Appellant contends that the lower court erred in determining that its perfected security interest did not have priority over the security interest of appellee for the following reasons: (1) the money loaned to Chiarelli by appellee was not an advance within the meaning of 12A P.S. §9-107(b); (2) the money loaned to Chiarelli by appellee was not in fact used to purchase the air conditioners in which appellee claims a purchase money security interest; (3) the purchase money security interest claimed by appellee did not have priority because appellee did not satisfy the notification requirements of 12A P.S. §9-312(3)(b) and (c); (4) appellee did not send a separate notification each time that it expected to acquire a security interest in Chiarelli's inventory, and (5) appellant did not receive notice in compliance with the law as it existed at the time of the perfection of appellant's security interest. We will consider each of appellant's claims separately.

I

Appellant's first contention is that in order for the appellee to obtain a valid purchase money security in-

terest, appellee must have made an advance to Chiarelli within the meaning of 12A P.S. §9-107(b). §9-107 provides in relevant part as follows: "[a] security interest is a 'purchase money security interest' to the extent that it is . . . (b) taken by a person who by making advances or incurring an obligation gives value to enable the debtor to acquire rights in or the use of collateral if such value is in fact so used."[1]

Appellant argues that "making advances" means to pay before there is a legal obligation to do so and that the record does not disclose that an advance of this type was made. It is apparent from the stipulated facts, however, that the appellee provided new money as distinguished from a pre-existing claim or antecedent debt, the latter being excluded by the language of §9-107(b).[2]

We would therefore hold that the stipulation of facts sufficiently indicates that appellee provided advances to Chiarelli within the meaning of §9-107(b).

## II

Appellant's next contention is related to the same Code provision discussed above. §9-107(b) provides that a party will have a purchase money security interest only to the extent that advances made to enable the debtor to acquire rights in the collateral are "in fact so used". Appellant contends that the record does

[1] Act of April 6, 1953, P. L. 3, §9-107; reenacted October 2, 1959, P. L. 1023, §9, 12A P.S. §9-107.

[2] Comment 2 to §9-107 states: "[w]hen a purchase money interest is claimed by a secured party who is not a seller, he must of course have given present consideration. This Section therefore provides that the purchase money party must be one who gives value 'by making advances or incurring an obligation': the quoted language excludes from the purchase money category any security interest taken as security for or in satisfaction of a pre-existing claim or antecedent debt."

not show that the advances made by appellee were in fact used to purchase the air conditioners in question.

A review of the record discloses that the advances made by the appellee to Chiarelli were used for the purchase of the air conditioners. The security agreement between appellee and Chiarelli, which is part of the record, states: "[t]he loans made and to be made are for the purpose of supplying funds for the acquisition by [Chiarelli] of merchandise of the nature hereinafter described, particularly merchandise manufactured and/or sold by Fedders Corporation, and which [Chiarelli] from time to time will purchase from a distributor of such merchandise." In the stipulation of facts submitted by the parties, they agree "[t]hat on or about January 16, 1967 and thereafter at divers times, [appellee] loaned sums of money to [Chiarelli] to finance the purchase by [Chiarelli] from [a distributor] of certain air conditioning equipment manufactured by Fedders Corporation, twenty-six (26) in number, a complete schedule of which is attached to and . . . made part hereof."

This chain is completed by a trust receipt from the distributor to Chiarelli which is addressed to appellee, Fedders Financial Corporation. This receipt, which lists all the air conditioners involved by serial number, has been stipulated to by counsel. Therefore, the money advanced to Chiarelli by appellee was in fact used for the purchase of the air conditioners, and this is apparent from the record.

### III

Appellant's third argument is that he was not provided with proper notice under §9-312(3)(b) and (c).[3]

---

[3] Act of April 6, 1953, P. L. 3, §9-312; reenacted October 2, 1959, P. L. 1023, §9, 12A P.S. §9-312.

Section 9-312 concerns priorities among conflicting security interests in the same collateral. If appellant was not given proper notice, its security interest would prevail over appellee's purchase money security interest.

Appellant claims that the following notification did not adequately describe the inventory "by item or type", as required by §9-312(3)(c): "Fedders Financial Corporation has, or expects to acquire, purchase money security interest in certain inventory of [Chiarelli], and the proceeds therefrom, which inventory consists of: air conditioners, dehumidifiers, convectors, unit heaters, heating equipment, ranges, refrigerators, washers, ironers, dryers, dishwashers, sewing machines and other domestic and commercial appliances or the like and accessories and replacement parts for any such merchandise, and the proceeds thereof."

Under decisions prior to the adoption of the Uniform Commercial Code appellee might have been required to specify serial numbers in its notification. However, with the adoption of the Code, that requirement has been abandoned and appellee need only give such notification which reasonably identifies the goods. Act of April 6, 1953, P. L. 3, §9-110; reenacted October 2, 1959, P. L. 1023, §9. The direct specification of "air conditioners" in the notification letter is sufficient identification of the inventory here involved.

## IV

Appellant's fourth argument is that appellee did not send a separate notification letter to appellant each time appellee had or expected to acquire a purchase money security interest in Chiarelli's inventory. Appellant notes that the letter of notification was sent to appellant on December 22, 1966, and that some of the air conditioners in question were not shipped to Chiarelli until sixteen months later.

The Code contains no provision which would require a separate notification each time goods are shipped to a dealer. It is apparent, however, from comment 3 to §9-312 that the reason for notification of other creditors is to allow them to avoid a fraudulent debtor who "may apply to the secured party for advances even though he has already given a security interest in the inventory to another secured party". Once appellant was informed of the relationship between appellee and Chiarelli, it certainly could have ascertained the nature and status of that relationship from appellee and protected itself against a fraudulent debtor. Furthermore, appellant has not made any allegation that it gave new value to Chiarelli after December 22, 1966.

The notification given by appellee clearly states that it "has or expects to acquire, a purchase money security interest in [certain] inventory of [Chiarelli]. . . ." This would cover after-acquired inventory reasonably identified in the notification letter, and no additional notification should be required to satisfy §9-312(3)(b) and (c).

## V

Appellant's final claim in this appeal is that it is entitled to receive notice as required by Uniform Commercial Code provisions which were in force at the time appellant executed the security agreement upon which it is relying. The Code was amended subsequent to the time appellant and Chiarelli entered their security agreement in 1958. Prior to the amendment the notice referred to above had to describe the inventory in which the secured party claimed a purchase money security interest, had to state that the interest acquired was a purchase money security interest, and had to state the amount of said interest. See Act of April 6, 1953, P. L. 3, §9-312(4).

Appellant contends that it has acquired a vested interest under the old law to receive separate notice each time that appellee obtained a purchase money security interest in any items of the debtor's inventory. This contention is without merit.

Section 11 to the 1959 revision of the Uniform Commercial Code contains the provisions for transition between the 1953 Act and the revision.[4] Section 11 provides as follows: "[t]ransactions validly entered into after 12:01 a.m. on July 1, 1954, and before January 1, 1960, and which were subject to the provisions of this Act as it was in effect during such period and which would be subject to this Act as reenacted, amended and revised if they had been entered into after such effective date and the rights, duties and interests flowing from such transactions remain valid after such date and may be terminated, completed, consummated or enforced as required or permitted by this Act as reenacted, amended and revised. Security interests arising out of such transactions which are perfected when the reenactment amendment and revision of this Act becomes effective shall remain perfected until they lapse as provided in Section 12 and may be continued as permitted by this Act as reenacted, amended and revised."

There is no question that the authors of the 1959 revision desired the security agreements entered prior to the revision to be construed in accordance with the revision. Appellant claims nonetheless that it would be denied due process by such a construction. We are convinced that appellant has no vested right in the 1953 Act's procedures. Appellant has shown no substantive prejudice from the 1959 amendment, and therefore has suffered no deprivation of property without due process of law.

---

[4] Act of October 2, 1959, P. L. 1023, §11.

For the above reasons appellant has failed to demonstrate the invalidity of the appellee's purchase money security interest. As a result, appellant has not shown a meritorious defense to appellee's claim to the air conditioners involved in this action. We therefore affirm the order of the lower court dismissing appellant's petitions to strike off and open the default judgment taken against it.

DISSENTING OPINION BY CERCONE, J.:

I dissent from the majority's opinion on the reasoning that appellant had twenty days from the date of the service of writ of replevin with bond within which to file its answer. When plaintiff praeciped to have the writ of replevin issued with bond, rather than without bond as originally sought, plaintiff necessarily amended its cause of action from one without bond to one with bond. These two causes of action are distinct and separate from each other. The action of replevin without bond is *personam* in nature and the action of replevin with bond is *in rem* in nature. This distinction and the importance thereof was clearly stated by the Supreme Court in *County Construction Co. v. Livengood Construction Corp.*, 393 Pa. 39 (1958).

That the later praecipe for writ of replevin with bond and the service thereof constituted an important amendment and change is clearly revealed by the fact that the action of replevin with bond could not have been begun by the filing of a complaint as had originally been filed. Rule 1073 of the Pennsylvania Rules of Civil Procedure clearly provides that whereas the action of replevin without bond may be commenced by filing with the Prothonotary a praecipe for a writ of replevin without bond *or a complaint,* an action of replevin *with bond* can be commenced *only* by filing a praecipe for

writ of replevin with bond, together with affidavit of value and bond.

Therefore, when plaintiff in this case filed its praecipe for writ of replevin with bond, it was commencing a new cause of action *in the only manner in which such cause of action could have been commenced*. It follows that defendant was entitled to twenty days from the date of the service of that writ of replevin with bond in which to file its appearance and answer.

This conclusion is in no way weakened by the fact that the praecipe for writ of replevin with bond was required under Rule 1073(b) to be issued in the original action. The complaint originally filed and served upon defendant cannot under the Rules be viewed as the commencement of the action of replevin with bond.

I therefore strongly dissent from the majority's opinion and would reverse the action of the court below.