742 F.2d 797
 Bankr. L. Rep. P 70,018, 39 UCC Rep.Serv. 1
 In re John and Lois PRISTAS, Debtors,
v.
LANDAUS OF PLYMOUTH, INC.
John and Lois Pristas, Appellants in No. 83-3555.
In re Laura SPRAGUE, Debtor,
v.
LANDAUS OF PLYMOUTH, INC.
Laura Sprague, Appellant in No. 83-3556.
In re David D. TWARDOWSKI, Debtor,
v.
LANDAUS OF PLYMOUTH, INC.
David D. Twardowski, Appellant in No. 83-3557.
 Nos. 83-3555 to 83-3557.
 United States Court of Appeals,
Third Circuit.
 Submitted Under Third Circuit Rule 12(6)
June 12, 1984.
Decided Sept. 7, 1984.
As Amended Sept. 12, 1984.
 
 F. Charles Petrillo, Legal Services of Northeastern Pa., Inc., Wilkes-Barre, Pa., for appellants.
 Louis Shaffer, Shaffer & Chariton, Wilkes-Barre, Pa., for appellee.
 Before WEIS and BECKER, Circuit Judges, and OLIVER, District Judge.*
 OPINION OF THE COURT
 WEIS, Circuit Judge.
 
 
 1
 The question here is whether a purchase-money security interest in consumer goods survives when the debt is consolidated with that incurred for subsequent purchases. The bankruptcy judge concluded that the "add on" of both collateral and debt did not eliminate the purchase-money character of the security interest in original purchases. He therefore declined to avoid a creditor's liens under section 522(f)(2) of the Bankruptcy Reform Act, 11 U.S.C. Sec. 522(f)(2) (1982). We agree and will affirm but do so by applying a state's statute rather than its decisional law.
 
 
 2
 The debtors sought to avoid a creditor's security interests in household goods that had been exempted from the bankruptcy estates. The bankruptcy judge refused to avoid the liens, and the district court affirmed.
 
 
 3
 These three consolidated cases present the identical legal issue. The facts in each do not differ materially and, in the interest of brevity, therefore, we will detail the factual background only in the Pristas case.
 
 
 4
 On July 26, 1979, Lois Pristas purchased a washer from creditor Landaus of Plymouth, Inc., at its store in Pennsylvania. She agreed to pay a total of $404, as detailed in a retail installment contract executed by the parties that same day.
 
 
 5
 The agreement gave the seller "a security interest in the aforesaid goods until the final payment is made." The contract also provided that Landaus could add "subsequent purchases made by the Purchaser, and the total of payments hereof shall reflect the added cost and finance charge of said goods subsequently purchased." Also included was a statement that "the goods purchased hereunder shall be security for payment of the subsequent purchase."
 
 
 6
 The purchase price of the washer remained partially unpaid on January 24, 1980 when Mrs. Pristas bought a rocker-recliner from Landaus for $185.20. That figure, which included finance charges, was added to the unpaid balance on the washer increasing the total obligation to $519.20. The monthly payments were increased from $17 to $20.
 
 
 7
 The agreement on this second purchase noted that seller acquired a security interest in the rocker. In addition, the form provided that the additional purchase supplemented the one made in July 1979, that the agreement entered into at that time was incorporated, and that the second "instrument shall be a part of said Security Agreement/Retail Installment Contract as if it had been executed simultaneously therewith."
 
 
 8
 When Mrs. Pristas later defaulted in payments, Landaus obtained a judgment and levied against her property. After filing a petition in bankruptcy, Mrs. Pristas sought to avoid the security lien under 11 U.S.C. Sec. 522(f)(2) to the extent it impaired her bankruptcy exemptions.[1] She contended that once the washer secured not only its own price, but also that of the rocker, the creditor's interest in the washer was converted to a nonpurchase-money security interest avoidable under section 522(f)(2).
 
 
 9
 The bankruptcy judge concluded that the security interest created in July 1979 did not lose its purchase-money character when consolidated with the debt created in January 1980. 29 B.R. 711 (Bankr.M.D.Pa.1983). The judge held that the common law of Pennsylvania, as reflected in Page v. Wilson, 150 Pa.Super. 427, 28 A.2d 706 (1942), supplied a formula for apportioning the debtor's payments between the two purchases. Consequently, the point at which each debt was satisfied could be ascertained, and the purchase-money security interest in each item remained valid until that time. The purchase-money security interest, therefore, was not extinguished and would not be avoided by section 522(f)(2). The district court affirmed.
 
 
 10
 On appeal, Mrs. Pristas contends that the bankruptcy judge erred in implying a payment allocation formula when the agreement between the parties contained no such provision. She argues that, once collateral secures not only its own price but other purchases, the creditor holds only an avoidable nonpurchase-money security interest.
 
 
 11
 Section 522 of the Bankruptcy Reform Act of 1978, 11 U.S.C. Sec. 522, allows a debtor to withhold certain property from the bankruptcy estate. "The exemptions were designed to permit individual debtors to retain exempt property so that they will be able to enjoy a 'fresh start' after bankruptcy." United States v. Security Industrial Bank, 459 U.S. 70, 72 n. 1, 103 S.Ct. 407, 409 n. 1, 74 L.Ed.2d 235 (1982). In addition, section 522(f)(2) permits a debtor to set aside a lien on exempt property if the incumbrance is "a nonpossessory, nonpurchase-money security interest" in certain specified property, such as household goods, wearing apparel, and appliances. 11 U.S.C. Sec. 522(f)(2).[2]
 
 
 12
 The parties do not dispute that the articles in question here are among those listed in section 522(f)(2)(A), (B), and (C). Nor does the creditor advance any contention that its interest was other than "nonpossessory", that is, that the debtor had possession of the property rather than it being held by creditor as collateral. The contested issue is whether a purchase-money security interest in goods continues to be effective when the installment payment agreement is consolidated with that for a later purchased item.
 
 
 13
 The Bankruptcy Act does not define "purchase-money security interest." Therefore, we look to state law. See In re Manuel, 507 F.2d 990, 992 (5th Cir.1975). The Pennsylvania Uniform Commercial Code reads: "[A] security interest is a 'purchase money security interest' to the extent that it is: (a) taken or retained by the seller of the collateral to secure all or part of its price; or (b) taken by a person who by making advances or incurring an obligation gives value to enable the debtor to acquire rights in or the use of collateral if such value is in fact so used." 13 PA.CONS.STAT.ANN. Sec. 9107 (Purdon Pamph.1984). In sum, a purchase-money security interest exists if the collateral is the item purchased and it secures its own price.
 
 
 14
 "Price," for purposes of an installment sales contract, is not defined in the Commercial Code. However, we have little difficulty in concluding that "price" includes not only the actual cost of the goods but also financing charges and sales tax. That interpretation of the statute is but a recognition of the realities of the market place in today's credit-oriented society. It is consistent with the Code's policy to "simplify, clarify and modernize the law governing commercial transactions," as well as "[t]o permit the continued expansion of commercial practices through custom, usage, and agreement of the parties." 13 PA.CONS.STAT.ANN. Sec. 1102(b)(1), (2). Indeed, the same result would be reached under pre-Code law. See Bucyrus-Erie Co. v. Casey, 61 F.2d 473 (3d Cir.1932).
 
 
 15
 When Mrs. Pristas purchased the additional item in January 1980, Landaus combined the amounts owed on both purchases into a single debt, and increased the single monthly payments. The "add on" agreement, however, did not specify any method of payment application or balance reduction. Therefore, the purchaser would not know from the text of the document how payments would be credited and when individual purchases would be fully paid.
 
 
 16
 In the absence of a statutory or contractual provision, the creditor could have applied the payments to either item or to both in varying proportions. If the amounts received were applied to both purchases, the security interest in each item would linger longer than if payments were credited solely to either one.
 
 
 17
 The debtor's grievance in this case is that Landaus' security arrangement allowed goods actually paid for to remain subject to the creditor's security interest. The bankruptcy judge found the installment contract permissible because under Pennsylvania case law, in the absence of designation by the debtor, the creditor is free to apply the payments as he wishes or "in the way most beneficial to the creditor, that is, to the debt least secured." 29 B.R. at 713 (quoting Page v. Wilson, 150 Pa.Super. at 433, 28 A.2d at 709).
 
 
 18
 The issue presented here has been addressed by a number of bankruptcy courts with varying results. Some have adopted the "transformation rule," which holds that if an item of collateral purports to secure not only its own purchase price but also that of other items, the security interest that existed before the "add on" procedures is transformed into nonpurchase-money status. Those courts reason that because the item secures more than its own price, there is no longer a "pure" purchase-money security interest and consequently that lien disappears. See In re Manuel, 507 F.2d 990 (5th Cir.1975); In re Norrell, 426 F.Supp. 435 (D.C.Ga.1977); In re Krulick, 6 B.R. 443 (Bankr.M.D.Tenn.1980); In re Scott, 5 B.R. 37 (Bankr.M.D.Pa.1980); In re Mulcahy, 3 B.R. 454 (Bankr.S.D.Ind.1980).
 
 
 19
 Other courts have differed, holding that a security interest can have a "dual status" and that the presence of a nonpurchase-money security interest does not destroy the purchase-money aspect. This rationale is derived from the language of the Uniform Commercial Code Sec. 9-107, which states that a security interest is a purchase-money security interest "to the extent" that it is taken or retained by the seller of the collateral to secure all or part of its price. Thus, a purchase-money security interest in a quantity of goods can remain such "to the extent" it secures the price of that item, even though it may also secure the payment of other articles. See In re Breakiron, 32 B.R. 400 (Bankr.W.D.Pa.1983); In re Moore, 33 B.R. 72 (Bankr.D.Ore.1983); In re Gibson, 16 B.R. 257 (Bankr.D.Kan.1981); see also Note, "Section 522(f): A Proposal for the Survival of Purchase Money Security Interests Following Refinancing," 18 TULSA L.J. 280 (1982).
 
 
 20
 We believe that the latter view is correct. The "transformation rule" is misguided because it fails to consider the import of the critical language in section 9-107--"to the extent." By overlooking that phrase, the "transformation" courts adopt an unduly narrow view of the purchase-money security device. Their reasoning is inconsistent with the Commercial Code, which gives favored treatment to those financing arrangements on the theory they are beneficial both to buyers and sellers.
 
 
 21
 By contrast, acceptance of the "dual-status" rule, with its pro tanto preservation of purchase-money security interests, is more in harmony with the Code. Tolerance of "add-on" debt and collateral provisions, properly applied, carries out the approbation for purchase-money security arrangements and simplifies repeat transactions between the same buyer and seller.
 
 
 22
 Moreover, this approach has the positive consequence of a larger number of sales, and the net effect is no more detrimental to the buyer than if a number of purchases had been made from different vendors. Although not precisely on point, Fedders Financial Corporation v. Chiarelli Brothers, 221 Pa.Super. 224, 289 A.2d 169 (1972), is an indication that the Pennsylvania courts follow a similarly generous reading of section 9-107. See McLaughlin, " 'Add On' Clauses in Equipment Purchase Money Security Financing: Too Much of a Good Thing", 49 FORDHAM L.REV. 661 (1981) (discussing the competing considerations).
 
 
 23
 To apply the "dual-status" doctrine, it is necessary to determine the extent to which a particular item continues to secure its own price and the extent to which payment of other purchases is affected. If that allocation can be made, the purchase-money security interest survives and will not be avoided. The creditor's interest will be nullified under section 522(f)(2) only to the extent that it is nonpurchase-money security.
 
 
 24
 If the security agreement itself provides the method of allocation, then little difficulty is encountered. If, however, the contract is silent on this point, some courts have looked to state law for a formula. See In re Russell, 29 B.R. 270, 274 (Bankr.W.D.Okla.1983). Others have imposed a judicial "first-in first-out" rule. See In re Gibson, 16 B.R. 257 (Bankr.D.Kan.1981).
 
 
 25
 In this case, the bankruptcy judge turned to state decisional law in allocating the payments, and relied on Page v. Wilson. That case held that the debtor has the right to make an application in the first instance. If not exercised, the right is transferred to the creditor. When no designation has been made by either party, the court determines how payments are to be apportioned in accordance with equitable rules and principles.
 
 
 26
 Page then cites the "first-in first-out" system--payments are deemed to have been made in discharge of the earliest liability of a running account. In some instances, payment will be credited in the way most beneficial to the seller, that is, to the debt least secured.
 
 
 27
 The bankruptcy judge did not explore whether or how payments were actually allocated by the parties or which rule of Page v. Wilson was relevant. As we pointed out in In re Comer, 716 F.2d 168, 175 (3d Cir.1983), the equitable rules and principles of Page come into play only if neither party has made an application.
 
 
 28
 More to the point, however, is that the bankruptcy judge erred in not invoking Pennsylvania's Goods and Services Installment Sales Act, PA.STAT.ANN. tit. 69, Secs. 1101-2303 (Purdons Supp.1984). That statute covers any "retail installment sales contract ... made in Pennsylvania." Id. Sec. 1103. As such, it would apply to the transactions at issue here and would supplant Page v. Wilson.
 
 
 29
 The statute allows a creditor to consolidate original and subsequent purchases and to treat the initial purchases as security for the later ones. Id. Sec. 1801. It also sets forth a specific method for allocating payments. Section 1802 provides in pertinent part:
 
 
 30
 "When a subsequent purchase is made, the entire amount of all payments made previous thereto shall be deemed to have been applied toward the payment of the previous time sale price.... Each payment thereafter received shall be deemed to be allocated to all of the various time sale prices in the same proportion or ratio as the original cash sales prices of the various purchases bear to one another."
 
 
 31
 PA.STAT.ANN. tit. 69, Sec. 1802. When the installment obligation is increased, as happened in the Pristas case, the seller may elect to credit payments by allocating an amount equal to the original rate to the previous time sale price and the remainder to the later purchase. Id.
 
 
 32
 Landaus disputes the use of the statute, contending that it is pertinent only where no contract provision or oral understanding between the creditor and the debtor allocates the payments. This argument is puzzling because the agreement between the parties here contains no provision for apportionment. It is clear, however, that in the absence of agreement, the statute provides mandatory language that payments "shall be deemed" to have been applied in the specified manner.
 
 
 33
 We question whether the parties are free to disregard the provisions of the Act. Section 1102 provides that any waiver of the Act by the buyer "shall be deemed to be contrary to public policy and shall be unenforceable and void." Section 1103 follows with a proviso that, in circumstances applicable here, contracts are "subject to the provisions of the Act." Section 1801 says the agreements "may" contain "add on" clauses. When such procedures are included in the contract, the Act makes it clear that they "shall be deemed" to have certain effects.
 
 
 34
 There is no controlling state court decision providing that the Act applies in every instance, but we have no hesitancy in holding that it does apply in circumstances such as those present here. We are convinced that the statute supplies an apportionment formula for the cases at bar. See PA.STAT.ANN., tit. 69, Sec. 1908.
 
 
 35
 We conclude that in a retail installment sales contract within the scope of the Pennsylvania Goods and Services Installment Sales Act, the allocation provisions of the statute control. That being so, an assignment of the payments to the various debts may be made. Because apportionment of payments is possible, we hold that the Commercial Code permits the retention of a purchase-money security interest in goods that also secure later purchases to the extent the original items secure the unpaid part of their own price.
 
 
 36
 Although Page v. Wilson does not control because the Goods and Services Installment Sales Act applies, the bankruptcy judge was correct in refusing to avoid the creditor's purchase-money security interests. Accordingly, the judgments of the district court will be affirmed.
 
 
 
 *
 The Honorable John W. Oliver, United States District Judge for the Western District of Missouri, sitting by designation
 
 
 [1]
 The creditor in this case raises no challenge to the bankruptcy judge's avoidance of the judicial liens created by a sheriff's levy on property in the Pristas and Sprague cases. See 11 U.S.C. Sec. 522(f)(1). The question on appeal, therefore, is limited to the avoidance of security liens under section 522(f)(2)
 
 
 [2]
 Section 522(f)(2) provides in pertinent part:
 "f. Notwithstanding any waiver of exemptions, the debtor may avoid the fixing of a lien on an interest of the debtor in property to the extent that such lien impairs an exemption to which the debtor would have been entitled under subsection (b) of this section, if such lien is--
 * * *
 (2) a nonpossessory, nonpurchase-money security interest in any
 (A) household furnishings, household goods, wearing apparel, appliances, books, animals, crops, musical instruments, or jewelry that are held primarily for the personal, family, or household use of the debtor or a dependent of the debtor;
 (B) implements, professional books, or tools, of the trade of the debtor or the trade of a dependent of the debtor; or
 (C) professionally prescribed health aids for the debtor or a dependent of the debtor."