**In re Eugene Philip PARSLEY and Rebecca Sue Parsley, Debtors.**

**Bankruptcy No. IP88–2218WP V.**

United States Bankruptcy Court,
S.D. Indiana,
Indianapolis Division.

Sept. 27, 1988.

Kevin B. McCarthy, Indianapolis, Ind., U.S. Trustee.

William L. Price, Indianapolis, Ind., for debtors.

Timothy L. Brennan, Brennan, Curtis & Brennan, Indianapolis, Ind., for American Sec. Corp.

William E. Limeberry, Greenwood, Ind., for Gen. Finance Corp.

ORDER GRANTING IN PART AND DENYING IN PART MOTION TO AVOID LIENS OF AMERICAN SECURITY CORPORATION AND GENERAL FINANCE CORPORATION

RICHARD W. VANDIVIER,
Bankruptcy Judge.

This matter comes before the Court on two motions for avoidance of liens filed on April 11, 1988, one seeking to avoid the lien of American Security Corporation ("ASC") and one seeking to avoid the lien of General Finance Corporation ("GFC"). The mat-

ter has been heard and briefed. The Court now grants in part and denies in part the motions for the reasons below.

1. Documents provided by GFC indicate the following. On January 6, 1987, the Debtors bought several pieces of bedroom furniture from The Waterbed Room, financing $780.00 of the purchase price and giving the seller a security interest in the items purchased. On April 9, 1987, the Debtor bought additional furniture from Value City Furniture, financing $581.00 of the purchase price and giving the seller a security interest in the items purchased. Both contracts were assigned to GFC. On May 15, 1987, the Debtors refinanced these two debts by executing a note financing total of $1401.28 ("the GFC Note"). Of this, $34.25 was to go to the Debtors, with the remaining going to pay the prior accounts and various insurance and recording charges. The Debtors executed a security agreement, giving GFC a security interest in furniture securing the original credit agreements, providing that this furniture would secure not only the GFC Note, but any future advances. In the description of "Mortgaged Property", there is typed "Purchase Money:" followed by a description of the furniture.

2. The Court has not been provided with copies of the documents giving rise to the ASC loan, but the Debtors and ASC seem to agree on the essential facts. ASC is the assignee of a retail installment contract executed in May, 1986, by which the seller financed the purchase of certain personal property. In October, 1987, ASC renewed and refinanced the balance due.

3. On April 4, 1988, the Debtors filed for relief under Chapter 13 of the Bankruptcy Code. On April 11, 1988, the Debtors filed motions to avoid the liens of GFC and ASC, contending that the refinancing of the debts converted the purchase money security interests to nonpurchase money security interests, and that these security interests are avoidable under 11 U.S.C. section 522(f)(2). The Debtors' proposed plan provides that the security interests of GFC and ASC would be avoided and that GFC and ASC would be treated as general, unsecured creditors.

4. There has not been an evidentiary hearing on these motions, but the issue of whether refinancing or cross-collateralization converts a creditor's purchase money security interest to a nonpurchase money security interest has been fully briefed and the Court will decide this legal issue.

5. The Court has jurisdiction over this matter. 28 U.S.C. section 157(b)(2)(K).

6. A debtor may avoid a lien, to the extent that it impairs otherwise exempt property, if the lien is a nonpossessory, nonpurchase money security interest in household goods and furnishings. 11 U.S.C. section 522(f)(2)(A). There is no dispute that the collateral in question consists of household goods and furnishings which would be exempt if not encumbered. If the refinancing of the GFC and ASC debts rendered the liens securing them nonpurchase money security interests, the Debtors may avoid those security interests. If the cross-collateralization rendered the GFC lien a nonpurchase money security interest, that lien may be avoided. If the refinancing or cross-collateralization did not destroy the purchase money character of the liens, the Debtors may not avoid the liens, at least to the extent that the liens still secure the purchase price of the collateral.

7. Purchase money security interest ("PMSI") is not defined by the Bankruptcy Code. The Indiana version of the Uniform Commercial Code ("UCC") provides that a security interest is a PMSI "to the extent that it is (a) taken or retained by the seller of the collateral to secure all or part of its price; or (b) taken by a person who by making advances or incurring an obligation gives value to enable the debtor to acquire rights in or the use of collateral if such value is in fact so used." Ind.Code 26–1–9–107. The original sellers had purchase money security interests under subparagraph (a) because they retained security interests in the respective collateral to secure the purchase price. The weight of authority is that the purchase money character of a security interest is not destroyed

by merely assigning it. *See e.g. In re Keller*, 29 B.R. 91, 92 (Bankr.M.D.Fla. 1983). GFC and ASC therefore held valid purchase money security interests as assignees of the original sellers.

8. The UCC is not the only state law on the subject of security interests. The Indiana version of the Uniform Consumer Credit Code ("UCCC") provides that, as a general rule, a seller in a consumer credit sale (which includes an assignee, Ind.Code 24-4.5-2-107) may take a security interest *only* in the property sold. Ind.Code 24-4.-5-2-407. Any security interest taken in violation of that provision is void. *Id.* While there is a limited provision for cross-collateralization, that provision is not applicable to assignees not related to the original sellers. *See* Ind.Code. 24-4.5-2-408. If debts are properly cross-collateralized or consolidated into one debt, payments are deemed applied to the oldest debts first, and the security interests in each item of collateral is released as the debt originally incurred respecting the item is paid. *See* Ind. Code 24-4.5-2-409. This method of payment application is known as "First In, First Out" or "FIFO". These provisions reflect a state concern that consumers' possessions not be unduly burdened by serving as collateral once the purchase price has been paid.

9. All the debts at issue originated in consumer credit sales subject to the UCCC. GFC's attempted cross-collateralization when it combined and refinanced the two loans it held may have been in violation of the UCCC, unless GFC is related to the original sellers. If cross-collateralization destroys the purchase money nature of a security interest, it would be anomalous if GFC managed to retain its PMSI simply because its attempt to cross-collateralize violated state law. As discussed below, however, even if GFC did properly cross-collateralize, that would have no effect on the avoidability of its security interest.

10. There is a split in authority on whether the purchase money nature of a security interest is destroyed by refinancing of a loan or by allowing the collateral to secure anything but its own purchase price. *See e.g. In re Billings*, 838 F.2d 405, 409 (10th Cir.1988) (refinancing did not destroy PMSI); *In re Pristas*, 742 F.2d 797, 801 (3d Cir.1984) (consolidation of debt and "add on" to security agreement did not destroy PMSI); *In re Snipes*, 86 B.R. 1006, 1009 (Bankr.W.D.Mo.1988) (consolidation destroyed PMSI); *In re Bowen*, 87 B.R. 70, 71 (Bankr.E.D.Mo.1988) (refinancing destroyed PMSI); *In re Gibson*, 16 B.R. 257, 266-69 (Bankr.D.Kan.1981) (refinancing, unless intended as a novation, and cross-collateralization do not destroy PMSI). Those that find that refinancing or cross-collateralization destroy the purchase money nature of a security interest generally rely on a literal application of the UCC definition of PMSI. In refinancing, the secured party did not "give[ ] value to enable the debtor to acquire rights in or the use of the collateral" since the debtor already had such rights before the refinancing. In the case of cross-collateralization, the collateral secures more than just "all or part of its purchase price" and there is no way to know how to apportion payments among the purchase prices of the pieces of collateral and other charges unless the parties or state law provides a method. Courts finding that the purchase money nature has been lost follow the "transformation" approach, since refinancing or cross-collateralization is found to have transformed the PMSI into a non-PMSI.

11. Those courts finding that the purchase money nature of a security interest survive refinancing or cross-collateralization take the "dual status" approach, holding that the security interest retains its purchase money nature to the extent that the purchase price of the collateral has not been paid, but to the extent that it secures anything else but that unpaid balance, it is nonpurchase money. The security interest is not avoidable under section 522(f) to the extent that it is a PMSI, but avoidable to the extent that it is not.

12. While state law should be considered in determining the nature of a security interest, the issue of avoidability is a federal one and the Court's paramount concern must be effectuating the policies underlying the Bankruptcy Code. Before the

enactment of the Code, debtors had no power to avoid consensual nonpurchase money security interests in their household goods and furnishings. The legislative history of section 522(f) shows that congressional intent was to allow debtors to avoid security interests in already owned, used household goods and furnishings, because such security interests were often used oppressively by over-reaching creditors. *See In re Billings,* 838 F.2d at 409–10; *In re Gibson,* 16 B.R. at 265–66. Congress did not intend to enable debtors to avoid a security interest in collateral that the money advanced was used to purchase. *Id.* This Court concludes that under section 522(f) of the Bankruptcy Code, a holder of a security interest has an unavoidable PMSI to the extent that the purchase price of the collateral has never been paid by the debtor even if the collateral secures debt other than its own purchase price or if the debt has been refinanced, unless the refinancing was clearly intended as a novation, *see In re Billings,* 838 F.2d at 408. It is not inequitable to deny the debtor avoidance of a consensual security interest in property that the debtor acquired through the money or credit advances which the debtor has never yet repaid. It appears that this interpretation is most consistent with the UCC, *see In re Billings,* 838 F.2d at 410; *In re Pristas,* 742 F.2d at 801; *In re Gibson,* 16 B.R. at 267, but regardless of whether refinancing or cross-collateralization would destroy a PMSI in a non-bankruptcy context, the balance struck by Congress between a debtor's fresh start and a creditor's rights in collateral requires this Court to deny avoidance of a security interest to the extent that the debtor has never paid the purchase price.

13. The "dual status" approach which this Court is taking requires that a security interest be divided into two parts—the nonavoidable purchase money part, securing that part of the debt attributable to the unpaid part of the purchase price, and the avoidable nonpurchase money part, securing any other amounts. Neither the agreements between and Debtors and the creditors nor state law provides a method of allocating past payments between the pur-

chase price and other amounts (the FIFO provision of the UCCC does not apply to unrelated assignees). This Court will apply FIFO, finding it to be equitable to the parties and consistent with both congressional intent, *see In re Gibson,* 16 B.R. at 268–69, and with state concerns, *see* paragraph 8 above. Payments will be deemed applied to the oldest debts first, and if more than one item was purchased on the same day, payments will first be applied to the least expensive item. The purchase price includes the cost of the item and financing charges and sales tax attributable to that item. *See In re Pristas,* 742 F.2d at 800. Once the purchase price of an item has been paid, any security interest remaining in it becomes a nonpurchase money security interest and is avoidable under section 522(f).

The Court therefore GRANTS the motions of the Debtors to avoid the liens to the extent that the security interests are nonpurchase money security interests and DENIES the motions to the extent that they are purchase money security interests, as determined by the above decision.

SO ORDERED.