**In re Patricia Ann CLARK, Debtor.**

**Bankruptcy No. 92–31754–BKC–RAM.**

United States Bankruptcy Court,
S.D. Florida.

July 12, 1993.

G. Michael Keenan, West Palm Beach, FL, for debtor.

Stuart I. Levin, Miami, FL, for Norwest.

Irving Gennet, Boca Raton, FL, Trustee.

**ORDER AND MEMORANDUM OPINION GRANTING IN PART AND DENYING IN PART DEBTOR'S VERIFIED MOTION TO AVOID LIEN**

ROBERT A. MARK, Bankruptcy Judge.

Debtor seeks an order under § 522(f)(2)(A) of the Bankruptcy Code

avoiding a lien against certain household goods including a stereo system that was originally financed by a purchase money security agreement. The security interest is held by Norwest Financial Florida, Inc. ("Norwest"). The issue before the Court is whether a refinancing in which Norwest loaned additional money and took a security interest in additional collateral transformed the original purchase money security interest in the stereo into a non-purchase money security interest avoidable under § 522(f). The Court concludes that the lien is avoidable only against the additional goods pledged as part of the refinancing but not avoidable in the stereo system which retained its "purchase money" status.

### FACTS

On May 10, 1990, the Debtor purchased a stereo system from The Sound Shack, paying $126.08 down and financing the $900.00 balance of the purchase price. The financed portion was secured by a purchase money security interest. The Sound Shack assigned the security interest to Norwest on May 14, 1990.

On July 17, 1990, Norwest refinanced the loan, providing $1,511.15 in total financing. The Debtor received $166.79 from the loan proceeds with the remainder designated for payment to third parties and to Norwest including $277.37 to a department store and $899.76 designated as the balance due on the original loan on the stereo.

The Security Agreement executed as part of the refinancing, described the collateral as "Purchase money security interest on sales contract from Sound Shack: 1 Adcom GFA555 Power Amp. and 1 Adcom GTP400 Pre–Amp. Tuner, 1 ski equipment, 4 clarinets, 3 paintings, 1 stamp collection, 1 typewriter." The additional collateral was owned by the Debtor on the refinancing date, not acquired from the loan funds.

The Debtor filed her Chapter 7 petition on May 22, 1992. According to her sched-

ules, the loan balance as of the filing date was $800.00. Norwest presented no evidence disputing this amount.

### DISCUSSION

The Debtor seeks to avoid Norwest's lien pursuant to § 522(f)(2)(A), which provides:

(f) Notwithstanding any waiver of exemptions, the debtor may avoid the fixing of a lien on an interest of the debtor in property to the extent that such lien impairs an exemption to which the debtor would have been entitled under subsection (b) of this section, if such lien is—

(2) a nonpossessory, nonpurchase-money security interest in any—

(A) household furnishings, household goods, wearing apparel, appliances, books, animals, crops, musical instruments, or jewelry that are held primarily for the personal, family, or household use of the debtor or a dependent of the debtor.

█ The collateral, including the stereo, are clearly household goods or property within the statutory description in § 522(f)(2)(A). There is also no question that Norwest held a non-avoidable purchase money security interest in the stereo equipment under the original financing.[1] Finally, it is without dispute that Norwest's lien impairs an exemption to which the Debtor would be otherwise entitled under § 522(b) and Article X, Section 4(a)(2) of the Florida Constitution. The question for decision is whether the purchase money security interest in the stereo was transformed into an avoidable non-purchase money security interest upon the refinancing in July, 1990.

Courts are split on the effect of a refinancing and there is no binding 11th Circuit authority. Several courts apply the so-called transformation rule and hold that the lender loses its purchase money security interest when the original loan is refinanced, particularly when the loan amount is increased and additional collateral is giv-

---

**1.** Sound Shack's assignment of the original security interest to Norwest did not effect its purchase money character. *See Matter of Keller* 29 B.R. 91 (Bankr.M.D.Fla.1983) (assignment of in-

stallment contract for purchase of furniture did not destroy the purchase money character of the original security interest).

en. *See Mathews v. Transamerica Financial Services (In re Mathews)*, 724 F.2d 798 (9th Cir.1984); *Hipps v. Landmark Financial Services of Georgia, Inc. (In re Hipps)* 89 B.R. 264 (Bankr.N.D.Ga.1988); *ITT Financial Services (In re Franklin)*, 75 B.R. 268 (Bankr.M.D.Ga.1986). These courts conclude that a refinancing constitutes a novation of the original contract and payment of an antecedent debt thereby transforming the security interest into a non-purchase money security interest avoidable under § 522(f).

Other courts adopt a dual status approach when a refinancing includes other collateral and allow the purchase money security interest to remain on the originally financed property. *Billings v. Avco Colorado Industrial Bank (In re Billings)*, 838 F.2d 405 (10th Cir.1988); *Pristas v. Landaus of Plymouth, Inc.*, 742 F.2d 797 (3d Cir.1984); *In re Johnson*, 101 B.R. 280 (Bankr.W.D.Okl.1989); *In re Parsley*, 104 B.R. 72 (Bankr.S.D.Ind.1988); *In re Hemingson*, 84 B.R. 604 (Bankr.D.Minn.1988).

This Court agrees with the holding and reasoning in the "dual status" cases. The legislative history of § 522(f) indicates that this section was designed to allow debtors to avoid security interests in already owned, used household goods since such security interests were often used oppressively by over-reaching creditors. H.R.Rep. No. 95–595, 95th Cong., 2nd Sess. 127, *reprinted in* 1978 U.S.Code Cong. & Admin.News 5787, 5963, 6088. This policy is not served by applying the transformation rule in a refinancing case. As explained by the Tenth Circuit in *Billings*,

> When a debt secured by a purchase money security interest is refinanced, and the identical collateral remains as security for the refinanced debt, then neither the debt nor the security has changed its essential character. Thus, a creditor who renegotiates a purchase money loan is not committing the type of over-reaching that § 522(f) aims to prevent.

*In re Billings*, 838 F.2d at 410.

This Court also agrees with the Tenth Circuit's concern that the "transformation" rule could have a chilling effect on consumer credit since it could discourage creditors holding purchase money security interests from helping their debtors work out their problems through a refinancing. If a refinancing destroys the purchase money character of the original collateral, a creditor runs a substantial risk in refinancing any borrower who may file a bankruptcy petition. *See Billings*, 838 F.2d at 409; *Pristas*, 742 F.2d at 801.

Applying the "dual status" approach to the facts in this case, the Court finds that Norwest retains its lien on the originally financed stereo. Norwest's lien against the additional collateral pledged in the refinancing agreement is avoided.

One issue remains—the amount of the lien on the stereo equipment. To determine the amount, the Court must decide how to apply the approximately $711 in payments made by the Debtor on the refinanced loan before she filed her bankruptcy petition. Absent any provision in the loan documents allocating payments, this Court will follow those courts that apply the judicial first-in first-out methodology. *See e.g. In re Gibson*, 16 B.R. 257, 269–270 (Bankr.D.Kansas 1981). As applied here, the $711 in payments will be applied to the stereo equipment which was originally financed. Since the portion of the refinancing attributable to the stereo was $899, the portion of the remaining debt attributable to and secured by the stereo equipment is $188.

Therefore, it is—

ORDERED as follows:

1. Debtor's motion is granted in part and Norwest's security interest is avoided on the ski equipment, clarinets, paintings, stamp collection and typewriter described in the July 17, 1990 Security Agreement.

2. Debtor's motion is denied to the extent Debtor seeks to avoid Norwest's lien on the stereo equipment described in the July 17, 1990 Security Agreement. That lien is deemed to be a purchase money security interest securing a remaining claim in the amount of $188.00.

DONE AND ORDERED.