**In re Robert and Dawn SHORT, Debtors.**

**Bankruptcy No. BK 94–40009.**

United States Bankruptcy Court, S.D. Illinois.

July 21, 1994.

David Garavalia, Benton, IL, for American General Finance.

James E. Ford, Benton, IL, for debtors.

## OPINION

KENNETH J. MEYERS, Bankruptcy Judge.

Debtors Robert and Dawn Short seek to avoid the lien of American General Finance, Inc. ("American") as a nonpossessory, non-purchase money security interest impairing an exemption claimed by them in household goods. *See* 11 U.S.C. § 522(f)(2). American objects that its lien is a purchase money security interest not subject to avoidance under § 522(f)(2) and that its lien retained this status even though the original note granting such interest was consolidated with another obligation of the debtors, with the goods in question serving as collateral for the entire amount. The debtors respond that this refinancing destroyed the purchase money character of American's lien and that the lien, therefore, may be avoided under § 522(f)(2).

The facts are undisputed. On June 20, 1992, the debtors entered into a retail installment contract with Anderson Warehouse Furniture for the purchase of bedroom furniture. Under the contract, no interest was charged for one year and no payments were due until June 20, 1993, at which time the entire balance of $2,880.00 became due. The contract, which granted a security interest in the bedroom furniture purchased by the debtors, was assigned to American on the

date it was signed. The debtors made no payments under this contract.

On July 16, 1993, the debtors executed a note with American in which they consolidated the June 20 contract obligation with another note to American for $3,642.33 dated June 22, 1992. The July 16 note in the amount of $7,337.30 provided funds to pay off the June 20 and June 22 notes, with the remaining balance applied to pay credit life and disability insurance premiums. The July 16 note, providing for an interest rate of 21.90%, was to be paid in monthly installments, with the final payment due in July 1997.

A disclosure statement accompanying the note described the collateral for the July 16 note as a "continued purchase money interest" in the debtors' bedroom furniture and, on a separate line, listed numerous other recreational and household items owned by the debtors. There was no indication that these latter items served as collateral for the June 22 note or that American had a purchase money security interest in them.

The debtors made one payment under the July 16 note of $248.38 and a partial payment of $146.00. On January 4, 1994, the debtors filed their Chapter 7 bankruptcy petition. The debtors then moved to avoid American's lien on household goods, including the bedroom furniture, under § 522(f)(2).

*DISCUSSION*

Section 522(f)(2) allows a debtor to avoid the fixing of a lien on property that would otherwise be exempt if such lien is a nonpossessory, nonpurchase money security interest.[1] The Bankruptcy Code does not define "purchase money security interest" or specify how a lien's purchase money status is affected by refinancing or consolidation with other debt. Reference must be had, therefore, to the state law definition of "purchase money security interest" in § 9–107 of the Uniform Commercial Code. *See Pristas v.*

*Landaus of Plymouth, Inc. (In re Pristas),* 742 F.2d 797, 800 (3d Cir.1984). That section provides:

A security interest is a "purchase money security interest" *to the extent* that it is

(a) taken or retained by the seller of the collateral to secure all or part of its price; or

(b) taken by a person who by making advances or incurring an obligation gives value to enable the debtor to acquire rights in . . . collateral. . . .

810 ILCS 5/9–107 (emphasis added).

■ Under this definition, a seller obtains a purchase money security interest by retaining a security interest in goods sold. A financing agency, such as American in the present case, obtains a purchase money security interest when it advances money to the seller and takes back an assignment of chattel paper. *See* Uniform Commercial Code, § 9–107, cmt. 1 (1993); Raymond B. Check, *The Transformation Rule under § 522 of the Bankruptcy Code of 1978,* 84 Mich.L.Rev. 109, 126 n. 104 (1985) (hereinafter Check, *Transformation Rule* ).

■ In this case, American clearly had a purchase money security interest in the debtors' bedroom furniture when it accepted an assignment of the debtors' contract on these goods. Debtors contend that this interest was canceled when their original note of June 20 was consolidated with other indebtedness and the note was paid by renewal. American argues, however, that its purchase money lien survived despite this refinancing and that it retained a nonavoidable purchase money security interest in the debtors' bedroom furniture to the extent of the balance remaining on the original note for purchase of the collateral.

■ There is a split of authority among the circuits concerning whether a purchase money security interest is extinguished when the original purchase money loan is refi-

---

1. Section 522(f)(2) provides in pertinent part:
   (f) [T]he debtor may avoid the fixing of a lien on an interest of the debtor in property to the extent that such lien impairs an exemption to which the debtor would have been entitled . . . if such lien is—

   (2) a nonpossessory, nonpurchase-money security interest in any—
   (A) household furnishings . . . that are held primarily for the personal, family, or household use of the debtor. . . .
   11 U.S.C. § 522(f)(2).

nanced through renewal or consolidation with another obligation. One line of cases holds that a purchase money security interest is automatically "transformed" into a nonpurchase money interest when the proceeds of a renewal note are used to satisfy the original note. *See Matthews v. Transamerica Financial Services (In re Matthews),* 724 F.2d 798, 800 (9th Cir.1984); *Dominion Bank of Cumberlands v. Nuckolls,* 780 F.2d 408, 413 (4th Cir.1985); *In re Keeton,* 161 B.R. 410, 411 (Bankr.S.D.Ohio 1993); *Hipps v. Landmark Financial Services of Georgia, Inc. (In re Hipps),* 89 B.R. 264, 265 (Bankr.N.D.Ga. 1988); *In re Faughn,* 69 B.R. 18, 20–21 (Bankr.E.D.Mo.1986). Because the collateral now secures an antecedent debt rather than a debt for purchase of the collateral or, in the case of a renewal note consolidating debt or advancing new funds, secures more than its purchase price, these courts hold that the resulting lien on the purchased goods no longer qualifies as a "purchase money security interest" under § 9–107. Following such refinancing, then, the lien may be avoided in its entirety under § 522(f)(2).

■ The second line of cases, rejecting the "all or nothing" approach of the transformation rule, holds that a lien may be partially purchase-money and partially nonpurchase-money and that the purchase money aspect of a lien is not automatically destroyed by refinancing or consolidation with other debt. *See Billings v. Avco Colorado Industrial Bank (In re Billings),* 838 F.2d 405, 409 (10th Cir.1988); *Pristas,* 742 F.2d at 801; *Geist v. Converse County Bank (In re Geist),* 79 B.R. 939, 941 (D.Wyo.1987); *In re Hemingson,* 84 B.R. 604 (Bankr.D.Minn.1988); *In re Parsley,* 104 B.R. 72, 75 (Bankr.S.D.Ind. 1988). This view, referred to as the "dual status" rule, is premised on the language of § 9–107, which provides that a lien is a purchase money security interest "to the extent" that it is taken to secure the purchase price of collateral. Accordingly, the purchase money security interest taken under the original note is preserved to the extent of the balance remaining unpaid on the original purchase money loan. *See Russell v. Associates Financial Services Co. (In re Russell),* 29 B.R. 270, 273–74 (Bankr.W.D.Okla.1983).

Courts adopting the "dual status" rule note that it gives effect to the substance of the refinancing transaction.

Though in form the original note is canceled, its balance is absorbed into the refinancing loan. To the extent of that balance, the purchase money security interest taken under the original note likewise survives, because what is owed on the original note is not eliminated[;] it is merely transferred to, and increased in amount by, another obligation. The refinancing changes the character of neither the balance due under the first loan nor the security interest taken under it.

*Associates Finance v. Conn (In re Conn),* 16 B.R. 454, 459 (Bankr.W.D.Ky.1982); *see Russell,* 29 B.R. at 273.

■ The difficulty with the dual status rule lies in determining the extent of the purchase money interest remaining after refinancing. *See Pristas,* 742 F.2d at 801; *Coomer v. Barclays American Financial, Inc. (In re Coomer),* 8 B.R. 351, 353–54 (Bankr.E.D.Tenn.1980). When a purchase money loan has been consolidated with nonpurchase money debt and payments have ensued, some method of applying payments between the purchase money and nonpurchase money portions of the refinanced loan is necessary so that the purchase money collateral secures only its own price and does not remain as collateral for the entire obligation. *See Mulcahy v. Indianapolis Morris Plan (In re Mulcahy),* 3 B.R. 454, 457 (Bankr.S.D.Ind.1980). This problem has led some courts to find that purchase money status is forfeited if no method of allocation has been supplied, either by the parties' contract or by statute. *See Coomer,* 8 B.R. at 355; *Mulcahy,* 3 B.R. at 457; *cf. Pristas,* 742 F.2d at 802 (apportionment formula supplied by statute); *Matter of Weigert,* 145 B.R. 621, 623 (Bankr.D.Neb.1991) (parties' agreement provided allocation formula). Other courts have adopted a judicial "first in, first out" method of allocation, under which payments are applied sequentially to purchase money debts in the order in which they were incurred. *See In re Clark,* 156 B.R. 693, 695 (Bankr.S.D.Fla.1993); *Parsley,* 104 B.R. at 75; *Matter of Weinbrenner,* 53 B.R. 571,

579–80 (Bankr.W.D.Wis.1985); *Conn,* 16 B.R. at 458; *In re Gibson,* 16 B.R. 257, 267–68 (Bankr.D.Kan.1981); *see generally* Bernard A. Burk, *Preserving the Purchase Money Status of Refinanced or Commingled Purchase Money Debt,* 35 Stan.L.Rev. 1133, 1144–46 (1983) (hereinafter Burk, *Preserving Purchase Money Status* ).

■ Having considered the rationales for both the "automatic transformation" and "dual status" rules, this Court finds that the dual status rule more closely adheres to the statutory language of § 9–107 while effectuating the policy behind § 522(f)(2). The "to the extent" language of § 9–107 clearly contemplates that a lien may be partially purchase money and partially nonpurchase money, depending on the circumstances of its creation. Thus, if a lender makes two separate loans—one for the purchase of goods, the other a cash advance—and retains a security interest in the purchased goods for both loans, the resulting lien is both purchase money (for the outstanding balance of the purchase money loan) and nonpurchase money (for the amount remaining on the cash advance loan). No reason appears why the purchase money character of the first loan should disappear if the two loans are later consolidated, so long as the amounts attributable to the two loans may be separated. *See* Check, *Transformation Rule,* at 128.

■ Section 522(f)(2), moreover, with its distinction between purchase money and nonpurchase money liens, was designed to permit debtors to avoid liens attached to household goods already owned by them rather than liens on collateral purchased with the money advanced. *See Russell,* at 274. Congress limited this avoidance option to nonpurchase money interests in order to protect those lenders whose credit enabled the debtor to acquire the collateral in the first place. Check, *Transformation Rule,* at 127. When a purchase money loan is refinanced, the creditor is not committing the type of overreaching that § 522(f)(2) aims to prevent, as the purchased goods remain as collateral for the loan. Thus, application of the

dual status rule, with its recognition of the continued existence of the creditor's purchase money interest after refinancing, preserves the legislative balance between debtors' and creditors' rights in exempt property that is the purpose of § 522(f)(2). *See id.; In re Billings,* 838 F.2d at 409–10.

■ Courts in the Seventh Circuit have not embraced either the transformation or the dual status rule but have, for the most part, taken a case by case approach which examines whether the debtor's obligation has been so changed by the refinanced loan that the resulting lien can no longer be characterized as a purchase money security interest.[2] *See In re Hatfield,* 117 B.R. 387, 389–90 (Bankr.C.D.Ill.1990) (quoting from *In re Hills,* No. 86–72037, slip op. at 4–5 (Bankr. C.D.Ill. July 29, 1987)); *In re Gayhart,* 33 B.R. 699, 700–01 (Bankr.N.D.Ill.1983); *Matter of Weinbrenner,* 53 B.R. at 579–81; *Johnson v. Richardson (Matter of Richardson),* 47 B.R. 113, 117 (Bankr.W.D.Wis.1985); *but see In re Parsley,* 104 B.R. at 75 (applying "dual status" rule). Under this approach, a refinanced loan is determined to be either a renewal of the original purchase money obligation, in which case the purchase money lien survives, or a novation, which extinguishes the purchase money character of the loan, depending upon the degree of change in terms and obligation between the two loans. *See Hatfield,* 117 B.R. at 390 ("the greater the degree of change in obligation ..., the more likely a novation will be found").

■ While the "middle of the road" approach of these courts lacks the certainty of a well-defined rule such as the transformation or dual status rule, this approach is not surprising given the diversity of fact situations presented in cases examining the purchase money character of refinanced loans. In the case of a simple refinancing that merely extends the repayment period of a loan—with a reduction in the amount of monthly payments and the same interest rate and security, strict application of the automatic transformation rule works an obvious

**2.** The Seventh Circuit Court of Appeals has not yet ruled on the issue of retention of purchase money status following refinancing.

injustice to the lender who has acted to benefit the borrower. *See Gayhart,* 33 B.R. at 700–01; *Hatfield,* 117 B.R. at 390. At the other end of the spectrum, when a purchase money loan is refinanced for new consideration and the second note involves different security and terms, this change may be seen to evidence the parties' intent to enter into a new obligation that cannot be characterized as a purchase money loan. *See Hills,* slip op. at 5 (refinanced note involving fresh advance of funds constituted a novation). Thus, courts that employ a case by case approach attempt to give effect to the parties' intent as derived from the facts of a particular transaction.

The facts of this case support a finding that American retained a purchase money lien on the debtors' bedroom furniture under either the dual status rule of the Tenth and Third Circuits or the case by case approach of bankruptcy courts in this circuit. As noted above, the problem under the dual status rule is allocating payments between the purchase money and nonpurchase money aspects of a loan following consolidation in order to determine the extent to which the purchase money lien survives refinancing. The problem under the case by case approach is to determine whether the facts evidence the parties' intent to continue the purchase money character of the original loan.

In this case, the debtors had made no payments on the original purchase money loan of June 20 at the time they agreed to consolidate this obligation with another, nonpurchase money note of June 22. Since the entire purchase price of the collateral remained unpaid, it is unlikely the parties intended to extinguish the debtors' obligation under the first note or to change its character. Rather, the purchase money note of June 20, a no-interest note with one annual payment, was essentially "extended" by the consolidation note of July 16 to allow for monthly payments at a commensurately high interest rate. Thus, the July 16 note merely enabled the debtors to pay the original purchase price of the bedroom furniture over a longer period of time. Despite the change in interest rate and repayment terms, the purchase money character of the loan had not

become blurred by repeated refinancings, *see Slay v. Pioneer Credit Co. (In re Slay),* 8 B.R. 355, 358 (Bankr.E.D.Tenn.1980) ("at some point the number of transactions between the lender and the debtor destroys any claim that the debt is part purchase money"), and the essential character of American's interest in the purchase money collateral remained intact.

■ The parties' intent to continue the purchase money character of American's lien following consolidation was specifically stated in the documentation for the July 16 note, in which the security was described as a "continued purchase money interest" in the debtors' bedroom furniture. *Cf. In re Billings,* 838 F.2d at 109 (loan document expressly stating intent to continue the purchase money security interest showed parties did not intend to extinguish the original debt and security interest). While such a statement would not be sufficient, of itself, to preserve purchase money status upon refinancing, it adds weight to the Court's conclusion that the parties considered the new note to be a continuation of the debtors' original purchase money obligation. This statement of intent distinguishes the present case from *In re Hills,* in which the court found a novation based on the fact that the parties' note consolidating a purchase money obligation with nonpurchase money debt did not identify the purchased goods as collateral and stated that the creditor was "not being given a 'security interest in the goods or property being purchased.'" *Hills,* slip op. at 1. Based on the parties' express statement of intent in this case and the fact that no payments had been made on the original purchase money loan at the time of refinancing, the Court finds that the parties intended to continue the purchase money status of American's lien in the July 16 note consolidating debt.

■ The problem of determining the extent of American's purchase money lien following consolidation is complicated only slightly by the fact that the debtors made one monthly payment and a partial payment on the consolidated note before their bankruptcy filing. If the debtors had made no payments at all, the purchase money portion of the consolidated debt would be the amount

owing on the purchase money debt at the time of the consolidation. *See In re Slay*, 8 B.R. at 358. The *Slay* court, noting the difficulty of apportioning payments between the purchase money and nonpurchase money parts of a consolidated loan, ruled that normally a creditor's purchase money status is forfeited upon consolidation with nonpurchase money debt. However, the court found an exception to this general rule based on the fact that the debtors in *Slay* had made no payments following consolidation. *Id.*

█ It would be ironic if the debtors' payments here of $248.38 and $146.00 on a note that included $2,880.00 in purchase money debt would cause American's lien to lose its purchase money status completely. Neither the parties' contract nor an applicable statute provides a method for allocating payments between the purchase money and nonpurchase money portions of the consolidated debt.[3] However, courts of equity are peculiarly suited to the task of allocating payments, *see In re Weinbrenner*, 53 B.R. at 580 (citing *Luksus v. United Pacific Insurance Co.*, 452 F.2d 207, 209 (7th Cir.1971)), and have, in other contexts, supplied an allocation method when the parties failed to do so. *See* Burk, *Preserving Purchase Money Status*, at 1160, 1163 n. 107 (creditor's burden to prove security interest extends only to production of facts and documents necessary to application of tracing rule). Therefore, in the absence of contractual or legislative direction, the Court will allocate the debtors' payments to determine the amount still owing on the

purchase money debt—and, hence, the extent of American's purchase money lien—following consolidation. *See In re Conn*, 16 B.R., at 458.

█ Under the "first in, first out" allocation method employed by most courts, payments are deemed applied to the oldest debts first, with the result that purchase money liens are paid off in the order in which the goods are purchased. *See Parsley*, 104 B.R. at 74; *Conn*, 16 B.R. at 458.[4] Once the purchase price of an item has been paid, any security interest remaining in it becomes a nonpurchase money security interest and is avoidable under § 522(f)(2). The purchase price includes the cost of the item and any financing charges and sales taxes attributable to that item. *Parsley; see* Burk, *Preserving Purchase Money Status*, at 1178 (charges that would be considered part of the purchase money obligation of the original sale are accorded similar status after refinancing).

█ In this case, there were no financing charges on the June 20 purchase money loan, as it was interest-free for the one-year term of the loan.[5] The $2,880.00 amount of the loan presumably included sales taxes on the purchase of the bedroom furniture. Accordingly, the debtors' payments of $248.38 and $146.00 will be applied to reduce the unpaid purchase price of $2,880.00, resulting in a continued purchase money lien on the bedroom furniture of $2,485.62. The debtors'

---

3. The Illinois Retail Installment Sales Act provides a method of applying payments when two or more sales contracts have been consolidated. *See* 815 ILCS 405/22 (1993). This provision applies only to a "seller," which does not include an assignee such as American in this case. *See* 815 ILCS 405/2.4.

4. While this method seems more suited to situations involving consolidation of multiple purchase money transactions rather than consolidation, as here, of purchase money with nonpurchase money debt, the cases do not make a distinction between these situations. *Cf. Clark*, 156 B.R. at 695 (first in, first out method applied to consolidation of purchase money and nonpurchase money debt); *Conn*, 16 B.R. at 457–59 (same). It may be more appropriate in the latter instance to apply payments to the purchase money debt first, so that a creditor would be prohibit-

ed from allocating any repayment to nonpurchase money debt until all the purchase money debt is paid. *See* Burk, *Preserving Purchase Money Status*, at 1175. In this case, however, the result would be the same, as the debtors' June 20 purchase money obligation predated their nonpurchase money debt of June 22.

5. American has not argued that its purchase money lien following refinancing includes a proportionate amount of the interest and insurance charges attributable to the $2,880.00 purchase money balance. *See* Burk, *Preserving Purchase Money Status*, at 1178 n. 150 (purchase money lien following refinancing should include added finance charges that enable debtors to keep their collateral as well as insurance premiums that serve to guarantee the debtors' obligation). Accordingly, the Court makes no determination in this regard.

motion to avoid lien is granted to the extent of American's remaining nonpurchase money lien on this furniture.