**In re OUR OWN HARDWARE COMPANY, Appellant.**

**The Provident Bank, Tom's Home Center, Inc., Appellees.**

**In re TOM'S HOME CENTER, INC., Debtor.**

**Cause No. NA 95–0069–C B/H. U.S.B.C. No. 95–90030 BHL–11.**

United States District Court, S.D. Indiana, New Albany Division.

March 29, 1996.

John S. Egan, Brown Todd & Heyburn, Louisville, KY, for Plaintiff.

C. William Lohmeyer, New Albany, IN, John R. Wirthlin, Cincinnati, OH, for Defendant.

### ENTRY

BARKER, Chief Judge.

This case involves a priority dispute between two properly perfected secured creditors in a commercial bankruptcy proceeding. The dispute relates to two shipments of inventory items on November 18, 1994 and December 2, 1994 to the debtor, Tom's Home Center ("the debtor"). The sole issue on appeal is whether the shipments lost their PMSI priority status as a result of the cash nature of the transactions required by the PMSI creditor, Our Own Hardware ("Our Own"). For the reasons set out below, the court finds that the cash basis of the transactions negated any PMSI claim as to that inventory. The decision of the Bankruptcy Court was not clearly erroneous and must be upheld.

### I. BACKGROUND

The parties agree that the following facts are undisputed. The debtor, Tom's Home Center ("the debtor") operated a hardware business in Lawrenceburg, Indiana. Our Own Hardware ("Our Own") is a distributor of hardware products. Our Own sold hardware products directly to the debtor or ordered from other vendors and sold to the debtor on a revolving credit arrangement advanced by Our Own.

On March 7, 1988, the debtor executed a security agreement with Provident Bank ("Provident") in which Provident acquired a blanket security interest in all the assets of the debtor, including inventory. The security interest was properly perfected.

Subsequently, in January 1992, the debtor entered into an agreement with Our Own to provide inventory on a credit account, secured by a purchase money security interest ("PMSI") in the collateral. The collateral involved inventory shipped by Our Own or inventory shipped from other vendors and paid for by Our Own. Our Own provided notice to Provident and properly perfected its PMSI security interest in the inventory.

Our Own and the debtor employed a scheduled liquidation process to reduce the debt owed by the debtor. Under this arrangement, the debtor was permitted to remit payment for the inventory it acquired on a bimonthly basis. The funds were applied first to the oldest outstanding invoices, in accordance with Our Own's normal policy. This payment method continued until October 1994 when Our Own learned that the debtor had become insolvent. When the debtor placed two subsequent orders, Our Own required a cash payment prior to delivering the goods. In the first transaction on November 18, 1994, Our Own shipped paint worth $5,933.35, and required a cash payment for the same amount. In the second transaction on December 2, 1994, Our Own shipped goods worth $5400, requiring a cash payment of $21,600. The debtor, by and through Thomas Schneider, testified that the terms of the two deliveries were cash-on-delivery transactions.

On April 17, 1995 the Bankruptcy Court ruled that the cash-on-delivery basis of the two purchases in November and December 1994 negated any purchase money security status as to those two shipments of inventory, because that inventory was paid in full on delivery. Our Own appeals the factual finding of the Bankruptcy Court that the two shipments constituted cash-on-delivery payments.

### II. DISCUSSION

#### A. Standard of Review

The standard which this Court must apply when reviewing decisions of the Bankruptcy Court is set forth in Rule 8013 of the Federal Rules of Bankruptcy Procedure:

> On an appeal the district court or bankruptcy appellate panel may affirm, modify, or reverse a bankruptcy judge's judgment, order, or decree or remand with instructions for further proceedings. Findings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous, and due regard shall be

given to the opportunity of the bankruptcy court to judge the credibility of witnesses. Fed.R.Bankr.P. 8013.

■ Thus, the district judge is required to accept the bankruptcy judge's findings on questions of fact as long as they are not clearly erroneous. *Matter of Tolona Pizza Products Corp.*, 3 F.3d 1029, 1033 (7th Cir. 1993). "The clearly erroneous standard requires this court to give great deference to the bankruptcy court, the trier of fact." *Matter of Love*, 957 F.2d 1350, 1354 (7th Cir.1992).

■ By contrast, the bankruptcy court's conclusions of law are subject to de novo review on appeal. *Matter of Voelker*, 42 F.3d 1050, 1051 (7th Cir.1994); *Meyer v. Rigdon*, 36 F.3d 1375, 1378 (7th Cir.1994); *Lehman's Inc. of Anderson v. Hittle*, 163 B.R. 814, 816 (S.D.Ind.1994).

### B. Security Interest Priorities

[3, 4] The existence of a properly perfected security interest is a question of state law. *Matter of Martin Grinding & Machine Works, Inc.*, 793 F.2d 592, 594 (7th Cir.1986). In this case, as the security interests were filed and perfected in Indiana, Indiana law determines the scope of the parties' security interests. *Id.* Indiana's Uniform Commercial Code ("UCC") governs the perfection and priority of such security interests. Ind. Code § 26–1–9–101 *et seq.*

The UCC defines a security interest as a purchase money security interest to the extent that it is:

(a) Taken or retained by the seller of the collateral to secure all or part of its price; or

(b) Taken by a person who by making advances or incurring an obligation gives value to enable the debtor to acquire rights in or the use of collateral if such value is in fact so used.

Ind.Code § 26–1–9–107.

The general priority rule states that, absent specified exceptions, the secured creditor that is first in time to file or perfect will take priority over any other secured party. Ind.Code § 26–1–9–312(5). The narrow exception for a PMSI creditor allows the PMSI creditor to circumvent the usual first-in-time rule only if the PMSI creditor meets all the requirements set out in Ind.Code § 26–1–9–312(3).

It is undisputed that Our Own initially acquired a properly perfected PMSI in the inventory it sold to the debtor, pursuant to the requirements of Ind.Code § 26–1–9–312(3). Therefore, Our Own would be entitled, as a PMSI creditor, to assert its priority interest under the UCC over Provident's prior security agreement on inventory items covered under the PMSI agreement. *Id.*

### C. The Two Inventory Shipments Under the Altered Payment Terms

■ The narrow issue before the Court is whether Our Own's unilateral changes in payment and delivery terms after learning of the debtor's financial insolvency constituted a cash-on-delivery transaction on subsequent purchases, which would destroy its PMSI status as to that inventory.[1] This is a case of first impression on this issue.

Research has failed to reveal any case that deals directly with the effect on a secured

---

1. Notably, the bankruptcy judge held that the prior *credit* purchases in this action retained their PMSI character, utilizing the so called "dual status" approach.

Courts that have addressed the issue of whether a creditor's purchase money security interest is destroyed when after-acquired property clauses or future advances clauses are exercised under the same agreement have yielded varied results. Courts that have adopted the "transformation rule" have held that where the PMSI creditor arranged the transaction so that it retained title to *all* goods until the last item was completely paid off, the PMSI status was destroyed. *See e.g. Southtrust Bank v. Borg–Warner Acceptance Corp.*, 760 F.2d 1240 (11th Cir.1985) (exercise of

future advances clause destroyed PMSI status where creditor cross-collateralized all goods); *In re Manuel*, 507 F.2d 990 (5th Cir.1975) (holding that the creditor's cross collateralization of the goods destroyed the creditor's PMSI status); *McCombs Family Retail Services v. McCombs*, 126 B.R. 611 (N.D.Ala.1989) (add-on system of combining liens on consumer goods destroyed PMSI status); *In re Freeman*, 956 F.2d 252 (11th Cir.1992) (same).

By contrast, other courts addressing this issue have followed the "dual status" rule, which recognizes that a PMSI can survive the "add on" sale when the creditor utilizes express contract language allocating payment, thus providing some method for the courts to determine the extent to which each item of collateral secures its

party's PMSI status when a creditor unilaterally alters the payment terms for a defaulting debtor. However, the definition of a PMSI under the UCC is instructive. To qualify as a PMSI, the security interest in the inventory must be taken *to secure all or part of its price.* Ind.Code § 26–1–9–107. Thus, for the two disputed transactions to qualify as PMSI transactions, the Court must find that the cash payments made by the debtor were *not* in payment for the goods delivered in November and December 1994.

To support that position, Appellant argues that the method of applying payments did not change during 1994, and that any payments made by the debtor were applied to the oldest outstanding invoices. The Court finds this argument unconvincing. Our Own altered the payment terms of the debtor's purchases after learning of its insolvency. This action was clearly taken to protect its position with an insolvent buyer. Further, the amount of the first cash payment matched the purchase price of that inventory to the penny.

The Bankruptcy Court found, and we agree, that the change in terms of delivery constituted a cash-on-delivery only sale. The Bankruptcy Court based its findings on the fact that the seller conditioned the sale on a cash payment equal to, or in excess of, the purchase price of the goods. Further, the debtor provided testimony that he understood the sale of the goods to be cash-on-delivery transactions. Finally, the seller changed its custom of dealing with the debtor after learning of its insolvency.

Adequate support exists in the record to support the bankruptcy judge's factual finding that the two transactions in dispute constituted cash sales. The Court thus finds that the bankruptcy judge's finding of fact was not clearly erroneous and must be upheld.

From that factual finding, the legal conclusion logically flows. Our Own modified its custom of dealing with the debtor by demanding cash payments for subsequent purchases after October 1994. While this protected Our Own from risking any further financial loss, the creditor cannot also seek protection for that inventory under its PMSI status. Under the definition, a PMSI allows for the security interest only to the extent that it secures the unpaid price of the particular goods secured. Ind.Code § 26–1–9–107. To allow a creditor to assert such an interest in goods already paid for would unjustly compensate the PMSI creditor at the expense of other secured creditors.

### III. CONCLUSION

Considering all the facts, the Court concludes that the nature of the purchases in November and December 1994 were cash-on-delivery transactions. Therefore, no PMSI security interest attached to the two shipments of goods. Accordingly, the Order of the Bankruptcy Court is hereby affirmed.

AFFIRMED.

It is so ORDERED.

---

purchase money. *See e.g. In re Parsley,* 104 B.R. 72 (S.D.Ind.1988) (upholding PMSI status in a bankruptcy situation using a "dual status" approach); *Matter of Wiegert,* 145 B.R. 621 (D.Neb. 1991) (upholding PMSI status under "dual status" rule); *In re McCall,* 62 B.R. 57 (M.D.Ala. 1985) (same).

The Court need not address the Bankruptcy Court's determination as to the PMSI status of any prior credit purchases as neither party has raised this issue on appeal.